IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
BOROUGH OF UPPER SADDLE RIVER,
KAREN MILLER, ROY OSTROM, MARIA FLORIO,
MARK RUFFOLO AND LINDA MCDONALD,

                                Plaintiffs,

v.

VILLAGE OF AIRMONT, ROCKLAND COUNTY
SEWER DISTRICT #1.
                  Defendants.
-----------------------------------------------------------x

**AMENDED COMPLAINT**
**JURY DEMAND**

CIV. NO. 07 CIV. 0109

(WP-4)(MDF)

The plaintiffs Borough of Upper Saddle River, Karen Miller, Roy Ostrom, Maria Florio, Mark Ruffolo, and Linda McDonald by their attorneys Burke, Miele & Golden, LLP, allege for their amended complaint herein as follows:

## STATEMENT OF THE CASE

1. This action is a citizens suit brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (hereinafter "Clean Water Act") and the New York state common law claims, seeking relief from Defendants' violations of the Clean Water Act and related state common law provisions.

2. The plaintiffs seek injunctive relief, declaratory relief, civil penalties, attorneys' fees, compensatory damages, punitive damages, and costs.

## JURISDICTION

3. This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 33 U.S.C. § 1365 (a)(1) and federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. §1367.

4. On October 6, 2006, the plaintiff Borough of Upper Saddle River ("USR") gave notice of the violations and of its intent to file suit against the defendants to the Administrator of the United States Environmental Protection Agency ("EPA"), to the Commissioner of the New York State Department of Environmental Conservation ("DEC"), and to the defendants, pursuant to 33 U.S.C. § 1365 (b)(1)(A) of the Clean Water Act. (attached hereto)

5. More than 60 days have passed since the above-referenced notice was served upon defendants and the governmental parties named above, thus satisfying section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. 1365 (b)(1)(A).

6. Neither the EPA nor the DEC has commenced and diligently prosecuted a court action to redress the violations under section 505(b)(1)(B) of the Clean Water Act, 33 U.S.C. § 1365 (b)(1)(B).

## VENUE

7. Venue is appropriate in the Southern District of New York pursuant to Section 505 (c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1) because the source of the violations is located within this District.

## PARTIES & GENERAL ALLEGATIONS

8. The Borough of Upper Saddle River, whose border abuts the Village of Airmont, is a municipality under the laws of the State of New Jersey.

9. The plaintiff USR is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a).

10. USR owns park land known as "Lyons Park" which its residents use for recreation which abuts the Saddle River. As a result of the recent sewage spills in the Village of Airmont (some but not all of which are listed below) some of the residents have not recreated or permitted their families to recreate in the park particularly in the areas closest to the river.

11. Karen Miller is a resident of USR and is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a) who resides near USR's border with the Village of Airmont and her family reside in the immediate vicinity of the Saddle River. Ms. Miller and her young children and other members of her family have used the Saddle River for recreational purposes. As a result of the recent frequent sewage spills occurring in the Village of Airmont and flowing into the Saddle River the water of the Saddle River (some but not all of which are listed below) has lost clarity, has become murky and smells of sewage. Ms. Miller and her family find these conditions unpleasant and esthetically offensive. These conditions have had an impact on the frequency and manner in which Ms. Miller and her family use and enjoy the Saddle River. During the month of March 2007, Ms. Miller's minor child came in contact with the river water. The child required immediate decontamination as a result of a fear of contact to waters containing sewage. Ms. Miller and her family would use the

3

Saddle River much more if its water remained clear and without sewage and foul odors. The most recent sewage spills in the Village of Airmont have prevented Ms. Miller and her family from using and enjoying the Saddle River.

12. Roy Ostrom is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a). He is a resident of USR whose property abuts the Saddle River and it is also located near the boarder of the Village of Airmont and USR. Mr. Ostrom has used and enjoyed the Saddle River in the past for fishing, river walks and backyard gatherings that include dining particularly in the warm months of the spring, summer and fall. As a result of the recent and frequent sewage spills occurring in the Village of Airmont and flowing into the Saddle River (some but not all of which are included below) the water of the Saddle River has lost its clarity, has become murky and smells of sewage. As a result of the listed spills among others Mr. Ostrom no longer fishes in the Saddle River. As a result of the listed spills and others not listed the river and surrounding area's odor is so foul of sewage that Mr. Ostrom does not use his backyard as he desires. He has made alternate plans in the summer because of the Village of Airmont spills and foul smells and has contemplated selling his home.

13. Maria Florio and her husband Ruffolo and their family are "citizens" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a) who reside near the border of the Village of Airmont and USR and in the immediate vicinity of the Saddle River. Ms. Florio and her husband Ruffolo have a young son with whom they would walk along the river to his school and to the Town library. They have used the Saddle River for recreational purposes. As a result of the

4

recent and frequent sewage spills (some but not all of which are listed below) occurring in the Village of Airmont and flowing into the Saddle River the water of the Saddle River has lost its clarity, has become murky and smells of sewage. Ms. Florio and Ruffolo and their family find these conditions unpleasant and esthetically offensive. They have impacted the frequency and manner in which their family enjoys the Saddle River.

14. Linda McDonald is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a) and is a resident of USR whose property abuts the Saddle River and is located near the boarder of the Village of Airmont and USR. Ms. McDonald has used and enjoyed the Saddle River in the past for fishing, river walks and other recreational activities. As a result of the recent and frequent sewage spills (some but not all of which are listed below) occurring in the Village of Airmont and flowing into the Saddle River the water of the Saddle River has lost its clarity, has become murky and smells of sewage. Ms. McDonald and her family find these conditions unpleasant, esthetically offensive and have impacted the frequency and manner in which she and her family enjoy the Saddle River.

15. Defendant Village of Airmont is a political subdivision of the State of New York, duly incorporated under the laws of the State of New York, and is a "municipality" within the meaning of Section 502(4) of the Act, 33 U.S.C. § 1362(4), and a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5). Defendant Village of Airmont is a municipal corporation organized for the purpose of exercising those duties and prerogatives of local government and the administration of public affairs which have been conferred upon them by the laws of the State of New York. Upon information and belief, the Village of Airmont by their elected or appointed officials, has

the authority to provide sewer services to its residents and to approve sewer use fees and connections to the District to fund the operation and maintenance of the sewer system and to ensure compliance with applicable laws and regulations. The Village's continued approval of sewer connections and failure ensure compliance aids and abets the Rockland County Sewer District's continuous violations of the CWA as indicated in the listed spills below. Defendants Village of Airmont are named as Defendants, in part, to effectuate complete relief in this action.

16. Defendant Rockland County Sewer District No. 1 ("RCSD #1") is a county agency responsible for properly operating and maintaining interceptors and pumping stations owned by the RCSD in the system and all sewers within its boundaries, and is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

17. The quality of the Saddle River which flows through the Village of Airmont and the Borough of Upper Saddle River and its surrounding areas directly affects the health, recreational, aesthetic, commercial, and environmental interests of USR's residents. The interests of USR's residents are being, and will be, adversely affected by Defendants' failure to comply with the requirements of the Clean Water Act.

18. Defendants are "persons" within the meaning of the citizen suit provisions of the Section 505 (a)(1) of the Clean Water Act, 33 U.S.C. § 1365 (a)(1).

19. Congress enacted the Clean Water Act in 1972 for the purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251. One of the specific goals of the Act was "that the discharge of pollutants into the navigable waters be eliminated by 1985." Id.

20. The Clean Water Act prohibits the discharge of pollutants from a point source to the waters of the United States, except pursuant to, and in compliance with, a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §1311(a); 33 U.S.C. §1342. The State of New York is authorized to issue State Pollutant Discharge Elimination System ("SPDES") permits in lieu of the NPEDES permits pursuant to Clean Water Act § 492. 33 U.S.C. §1342.

21. The Clean Water Act defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

22. The Clean Water Act defines "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

23. Pipes are point sources within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(14).

24. "Waters of the United States" within the meaning of the Clean Water Act include any navigable waters or waters that are tributaries to navigable waters. 33 U.S.C. § 1362(7).

25. The Saddle River, its tributaries, and adjacent associate wetlands are waters of the United States within the meaning of the Clean Water Act.

26. As a direct consequence of defendants' conduct, the covered waterways have suffered degradation of the sort prohibited by the CWA and related state law and regulations, diminishing the utility of said waterways to plaintiffs.

27. As a direct consequence of defendants' conduct, plaintiffs' members have suffered compensable damages, arising from substantial and repeated sewage spills and overflows destruction of property and diminution in the projected values of their property.

28. Plaintiffs have no adequate remedy in law other than by and through the filing of this lawsuit.

### FIRST CLAIM FOR RELIEF: VIOLATION OF THE CLEAN WATER ACT BY SPECIFIC ILLEGAL DISCHARGES TO WATERS OF THE UNITED STATES

29. Plaintiffs reallege and incorporate by reference each and every allegation set forth above.

30. The wastewater collection and treatment system owned and operated by the Village of Airmont and RCSD #1 is a "treatment works" as that term is defined in Section 212(2)(A) and (B) of the Act, 33 U.S.C. § 1292(2)(A) and (B), and a "publicly owned treatment works" as that term is defined by 40 C.F.R. §122.2 and 40 C.F.R. 403.3(q).

31. The state Department of Environmental Conservation administers the State Pollution Discharge Elimination System permit program, which issued a SPDES Permit to Defendant RCSD #1, under the authority of Section 402 of the Act, 33 U.S.C. § 1342.

32. The Saddle River, to which pollutants have been discharged is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

33. Defendants discharge water pollution into the Saddle River, and its tributaries in the form of raw sewage, which includes but is not limited to, biological material and other organic matter exerting chemical and biological oxygen demand in the waters, fecal coliform bacteria; nutrients, including nitrogen and phosphorous; settleable, suspended and dissolved solids, including toilet paper and sewerage solids; salts; metals solid waste; pathogens; disinfectants (such as permanganate); and feminine products.

34. Unpermitted discharges from the Defendants have resulted in the presence of distinctly visible floating or settleable solids in the waters, as well as, suspended solids, deposits of sludge and silt, bad odors, materials harmful to aquatic life, distinctly visible color, and other conditions that alter the integrity of such waters.

35. Unpermitted discharges of wastewater to the navigable waters, of raw sewage, have occurred on numerous occasions and include, but are not limited to:

    a. August 23, 2006

    b. August 24, 2006

    c. August 25, 2006

    d. August 26, 2006

    e. August 27, 2006

    f. August 28, 2006

    g. August 29, 2006

    h. August 30, 2006

    i. September 1, 2006

  j. September 2, 2006

  k. September 3, 2006

  l. October 31, 2006

  m. November 6, 2006

  n. November 8, 2006

  o. On or about March 2, 2007

  p. And upon information and belief additional unreported spills from at least August 23, 2006 to present

36. Organisms in untreated wastewater containing raw sewage can cause a number of diseases in users of contaminated areas. These diseases include, but are not limited to, enteric diseases such as gastroenteritis, dysentery, and cholera. All of these diseases are highly communicable.

37. The Village of Airmont and Rockland County Sewer District #1 have discharged, and upon information and belief, continue to discharge, pollutants from manhole(s) at or adjacent to Cherry Lane, South Monsey Road, and in the vicinity of the Saddle River Valley Swim Club and other areas in the Village of Airmont and Rockland County Sewer District #1 into navigable waters without the authorization of a SPDES permit.

38. The unpermitted discharges include, without limitation, the unpermitted discharges identified in Paragraph 26 and 27(a) through (p).

39. Unless enjoined by the Court, the Village of Airmont and RCSD #1 will continue to discharge pollutants to navigable waters in violation of its SPDES permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342.

40. Each day of each unpermitted discharge of pollutants is a separate violation of Section 301 of the Act, 33 U.S.C. § 1311.

### CONTINUING VIOLATIONS

41. As of the date of the filing of this complaint, all of the violations Complained of in the October 6 2006 notice letter are continuing or are reasonably likely to continue.

### SECOND CLAIM FOR RELIEF

42. Plaintiffs Roy Ostrom reallege and incorporate by reference each and every allegation set forth above.

43. Defendants, by causing or allowing the discharge, or contributing to the discharge of sewage from the manholes and sewer pipes in the Village of Airmont -- Cherry Lane, South Monsey Road and Saddle River Swim Club into and upon the waters and subsurface and surface lands in the area of the Saddle River, which are used by or for the benefit of plaintiff, created and maintained a private nuisance through the injury to and the unreasonable and significant interference with the plaintiff's use and enjoyment of such dwelling and property.

44. As a proximate result of such wrongful actions and omissions by defendants, plaintiff has suffered injury to or loss real property value.

45. The defendants' activities pose a continuing threat to the plaintiff use and enjoyment of his property interests.

## THIRD CLAIM FOR RELIEF

46. Plaintiff USR reallege and incorporate by reference each and every allegation set forth above.

47. Defendants, by causing or allowing the discharge, or contributing to the discharge of sewage from Cherry Lane manholes, South Monsey Road and the manholes and pipes in the vicinity of the Saddle River Swim Club into and upon the waters and subsurface and surface lands of the Saddle River, which are used by or for the benefit of plaintiffs and the residents of USR, unreasonably and significantly interfered and will continue to interfere with the rights of plaintiffs classes to waters, lands, and an environment that are free from pollution and contamination.

48. Defendants' unreasonable and significant interference with the rights of plaintiff and rights common to the general public, created a public nuisance under applicable New York state common law principles and caused plaintiff to suffer special and distinct harm to their health Safety and/or comfort, different from that suffered by other members of the public.

49. The harm suffered by plaintiff USR as a direct and proximate result of the wrongful acts and omissions of the defendants includes but is not limited to not limited to fishing and recreating, and long-lasting or permanent injury to the Saddle River.

50. Defendants owed a duty to plaintiff and the residents of USR to refrain from conduct in processing of sewage which reasonably and foreseeably could have been anticipated to cause such injuries.

## FOURTH CLAIM FOR RELIEF

51. Plaintiffs USR, Roy Ostram, and Linda McDonald reallege and incorporate by reference each and every allegation set forth above.

52. Defendants' conduct as described above constituted a trespass in that as a direct result of defendants' conduct, sewage was intentionally, recklessly, and negligently discharged from the treatment facilities and pipes maintained by the RCSD #1 into and upon the waters and subsurface and surface lands in the area of the Saddle River owned or by plaintiffs, or in which they have other property rights.

53. As a proximate result of defendants' trespass, the property rights of plaintiffs and members of the plaintiff classes have been injured and continue to be injured, including but not limited to injury to marine and wildlife resources. This injury is irreparable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court grant the following relief:

A. A judgment declaring that the Defendants have violated the Clean Water Act.

B. A permanent injunction directing Defendants to take all steps necessary to come into permanent, consistent compliance with the Clean Water Act, the regulations promulgated thereunder, and its SPDES permit

C. Award civil penalties against Defendants

D. Award Plaintiff their costs, including reasonable attorney, witness and consultant fees, as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365 (d);

E. Award compensatory and punitive damages and for harm to property;

F. Award compensatory damages for economic losses;

G. Award damages for interference with use and enjoyment of property interests and natural resources;

H. Award damages for the disruption and distress caused by the spills;.and

I. Award other such relief as this Court deems appropriate.

Dated: April 10, 2007

Respectfully submitted,

*Michael K Burke*
Michael K. Burke (MKB 7554)
Burke, Miele & Golden, LLP
100 Washington Street, P.O. Box 397
Suffern, New York 10901
(845) 357-7500