James V. Marks (JM 6257)
Roseann Bassler Dal Pra (RBD 4919)
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
212-513-3200

Attorneys for Defendant
Rockland County Sewer District #1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOROUGH OF UPPER SADDLE RIVER, ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>VILLAGE OF AIRMONT, ROCKLAND, COUNTY SEWER DISTRICT #1,<br><br>Defendants. | 07 Civ. 0109 (____) (MDF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROCKLAND COUNTY SEWER DISTRICT #1'S MOTION TO DISMISS ALL CLAIMS ASSERTED AGAINST IT BY PLAINTIFF BOROUGH OF UPPER SADDLE RIVER**

James V. Marks (JM 6257)
Roseann Bassler Dal Pra (RBD 4919)
195 Broadway
New York, NY 10007
(212) 513-3200 Phone

Lawrence R. Liebesman (Admitted Pro Hac Vice)
Steve Kelton (Admitted Pro Hac Vice)
2099 Pennsylvania Ave. NW
Washington, DC 20006
(202) 955-3000 Phone

Attorneys for Defendant
Rockland County Sewer District #1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... i

BACKGROUND .......... 1

A. Procedural History .......... 1
B. The Amended Complaint .......... 2

ARGUMENT .......... 4

POINT I

USR LACKS STANDING TO BRING ITS CWA CLAIMS AGAINST THE DISTRICT .......... 4

A. USR does not meet the requirements for municipality standing, and certainly cannot benefit from the doctrines of associational standing or *parens patriae*. .......... 5

B. The injuries alleged by USR are vague and insufficient to meet the requirement of showing "injury-in-fact." .......... 8

C. USR cannot establish a causal connection between its alleged injuries and the District's alleged discharges. .......... 10

POINT II

BECAUSE USR DOES NOT HAVE STANDING UNDER THE CWA, THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER USR'S STATE LAW CLAIMS BUT RATHER SHOULD DISMISS THEM. .......... 12

CONCLUSION .......... 14

## TABLE OF AUTHORITIES

### CASES

Borough of Carlstadt v. U.S. Army Corps of Eng'rs,
No. 05-2771, 2006 WL. 305314 (D.N.J. Feb. 8, 2006) .......... 5

California v. Auto. Mfrs. Ass'n, Inc.,
481 F.2d 122 (9th Cir. 1973), *cert. denied,* 414 U.S. 1045 (1973) .......... 5

City of Hartford v. Town of Glastonbury,
561 F.2d 1032 (2d Cir. 1976) .......... 6

City of New Rochelle v. Town of Mamaroneck,
111 F. Supp. 2d 353 (S.D.N.Y. 2000) .......... 4

City of New York v. Heckler,
578 F. Supp. 1109 (S.D.N.Y., 1984) .......... 5, 6

City of Sausalito v. O'Neill,
386 F.3d 486 (9th Cir. 2004) .......... 4

Colorado River Indian Tribes v. Town of Parker,
776 F.2d 846 (9th Cir. 1985) .......... 6

Concerned Area Residents for The Environment v. Southview Farm,
834 F. Supp. 1410 (W.D.N.Y. 1993) .......... 10

Florida Audubon Society v. Bentsen,
94 F.3d 658 (D.C. Cir. 1996) .......... 10

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,
528 U.S. 167 (2000) .......... 3, 4, 7

In re Gucci,
126 F.3d 380 (2d Cir. 1997) .......... 3

Hawaii v. Standard Oil Co.,
405 U.S. 251 (1972) .......... 5

Hunt v. Washington State Apple Advertising Comm.,
432 U.S. 333 (1977) .......... 5

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) .......... *passim*

Mancuso v. Consolidated Edison Co. of New York, 130 F. Supp. 2d 584 (S.D.N.Y.,2001) .......... 9

New York v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650 (W.D.N.Y. 2003) .......... 12

Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3rd Cir.), *cert. denied*, 111 S.Ct. 1018 1990 .......... 9

Massachusetts et al. v. U.S. Environmental Protection Agency, __ U.S. __, 1275 S. Ct. 1438, No. 05-1120 (Apr. 2, 2007) .......... 6

Village of Bensenville v. F.A.A., 376 F.3d 1114 (D.C. Cir. 2004) .......... 8

Warth v. Seldin, 422 U.S. 490 (1975) .......... 3, 7

Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP, 994 F. Supp. 202 (S.D.N.Y. 1998) .......... 3

Whitmore v. Arkansas, 495 U.S. 149 (1990) .......... 3

**FEDERAL STATUTES**

28 U.S.C. §1331 .......... 1

28 U.S.C. § 1367 .......... 1

33 U.S.C. §§ 1311(a) .......... 10

33 U.S.C. § 1342 .......... 10

33 U.S.C. § 1362(12) .......... 10

33 U.S.C. § 1362(14) .......... 10

33 U.S.C. § 1365(a)(1) .......... 1, 2

Fed. R. Civ. P. 12(b)(1) .......... 1

**STATE STATUTES**

N.J. Title 1:1-2 .......... 4

Defendant Rockland County Sewer District #1 (the "District") respectfully submits this memorandum of law in support of its Motion to Dismiss all claims asserted against it by plaintiff Borough of Upper Saddle River ("USR") pursuant to Fed. R. Civ. P. 12(b)(1) (the "Motion").[1] The grounds for the Motion are that USR lacks standing under Article III of the United States Constitution to assert claims against the District under the federal Clean Water Act, and, as such, the Court also should not exercise jurisdiction over USR's state common law claims.

For the reasons set forth below, the Motion should be granted in its entirety,

## BACKGROUND

A. Procedural History

On January 5, 2007, USR filed a Complaint against the District and defendant Village of Airmont (the "VoA"). The Complaint asserted one cause of action against the District and VoA under the federal Clean Water Act ("CWA") and alleged that this Court had subject matter jurisdiction pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §1331. See Complaint ¶¶ 1, 3.

On February 5, 2007, the District filed an Answer to the Complaint and wrote to the Court requesting a conference to discuss its intention of filing a motion to dismiss the claims asserted against it. In that letter, the District explained that USR lacked standing to bring claims against it under the CWA.

On March 12, 2007, counsel for the parties attended a conference with the Court. During the conference, the Court directed USR's counsel to provide the District's counsel with a proposed Amended Complaint. The Court instructed the District's counsel to review the

[1] At this time, the District does not seek the dismissal of the claims asserted by the individual plaintiffs, Karen Miller, Roy Ostrom, Maria Florio, Mark Ruffolo, and Linda McDonald. The District reserves the right to seek the dismissal of these claims at a later time.

proposed Amended Complaint and to advise whether it believed the proposed amendments obviated the need for a motion.

On April 2, 2007, USR's counsel provided the District's counsel with a proposed Amended Complaint. Shortly thereafter, the District's counsel advised the Court and USR's counsel that the proposed amendments did not cure USR's standing defects. On April 10, 2007, USR filed an Amended Complaint, which document was slightly different from the proposed Amended Complaint. Like the proposed Amended Complaint, however, the as-filed Amended Complaint also fails to establish that USR has standing to bring CWA claims against the District. As such, USR has now had three unsuccessful bites of the apple.

B. The Amended Complaint

The Amended Complaint joins five individuals as plaintiffs -- Karen Miller, Roy Ostrom, Maria Florio, Mark Ruffolo, and Linda McDonald (collectively, the "Individual Defendants") -- and adds three new state common law claims to the federal CWA claim. See Amended Complaint. The claims are summarized as follows:

| Claim Number | Claimant | Type of Claim | Nature of Claim |
|---|---|---|---|
| One | All Plaintiffs | Clean Water Act | Federal |
| Two | Roy Ostrom | Private Nuisance | State |
| Three | USR | Public Nuisance | State |
| Four | USR, Roy Ostrom, and Linda McDonald | Trespass | State |

The Amended Complaint alleges that the Court has subject matter jurisdiction over the CWA claim pursuant to 33 U.S.C. § 1365 (a)(1) and 28 U.S.C. § 1331; it alleges that the Court has jurisdiction over the state law claims under 28 U.S.C. § 1367. See id. at 3.

Like its predecessors, the Amended Complaint fails to allege the elements necessary for USR to have standing to assert CWA claims against the District. Specifically, and as explained more fully below, USR has failed to allege the key requirement for municipal standing, namely that its own interests, apart from the interests of its citizens, have been harmed by sanitary sewer overflows ("SSOs") "fairly traceable" to releases from the District's system. In an Amended Complaint filled with wild allegations, hypothetical discharges, and conjectural damages, USR seems to confuse its interests with those of its residents who—though important to a municipality—are not sufficient to confer standing upon USR. By failing to provide facts supporting a claim that USR's governmental or proprietary interests as a municipality have been harmed by the District's actions, USR fails the "case or controversy" test.

Indeed, USR's "wild allegations" of harm mask what is really at issue here—USR simply wants to stop development across the state line in Rockland County. USR does not hide its animosity towards cross-border growth in the County, even boasting to its citizens about four years of "active opposition to development in Rockland County that threatens the Saddle River and our community." *Upper Saddle River Borough Bulletin* (Jan. 2007), *available at* http://www.usrtoday.com/bulletin/0107.pdf (last visited Apr. 16, 2007). Grasping for the only tool it could find to try to derail their neighbor's lawful plans, USR has "latched on" to the citizen suit provision of the CWA, 33 U.S.C. § 1365, as the vehicle to stop the District from granting new sewer hookups for the foreseeable future.

## ARGUMENT

## POINT I

## USR LACKS STANDING TO BRING ITS CWA CLAIMS AGAINST THE DISTRICT.

The law is clear that USR has the burden of proving that this Court has jurisdiction over USR's CWA claims. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP, 994 F. Supp. 202, 206 (S.D.N.Y. 1998). The Supreme Court has held that the doctrine of standing provides as a key principle a way of identifying those disputes that are appropriately resolved through the judicial process. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990). Relying on black letter Supreme Court law, the Second Circuit has held that "Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" In re Gucci, 126 F.3d 380, 387-88 (2d Cir. 1997) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Every plaintiff asserting a cause of action must meet the Constitutional requirements of standing by showing that it is "entitled to have the court decide the merits of the dispute or of particular issues," and that there exists "a 'case or controversy' between [the plaintiff] and the defendant within the meaning of Article III." Id.

To meet the Article III "irreducible constitutional minimum" of standing, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-181 (2000) (citing Lujan, 504 U.S. at 560-61). These elements must be

established "separately for each form of relief sought" and for each claim brought by the party invoking federal jurisdiction. Laidlaw, 528 U.S. at 185.

A. USR does not meet the requirements for municipality standing, and certainly cannot benefit from the doctrines of associational standing or *parens patriae*.

This Court has already set the requirements for a municipality to establish standing to bring a complaint: "a plaintiff must allege a personal stake in the outcome of the case and a distinct and palpable injury by way of specific, concrete facts." City of New Rochelle v. Town of Mamaroneck, 111 F. Supp. 2d 353, 358 (S.D.N.Y. 2000) (internal quotation omitted). That is, a municipality must assert a direct governmental or proprietary interest—which at least one circuit deems to include the protection of a municipality's natural resources from harm. City of Sausalito v. O'Neill, 386 F.3d 486, 1198 (9th Cir. 2004). Here, in contrast, USR has not enumerated any proprietary or governmental interest, except for asserting that it owns land (Lyons Park) that abuts the Saddle River and that "some" of USR's residents allegedly cannot "recreate" there due to "the recent sewage spills." (Am. Compl. ¶ 10). USR has not even attempted to allege, with specificity, that the spills have interfered with its own obligations as a municipality, which are distinct from the separate interests of its residents.

USR seems to confuse its status as a municipality—a relatively rare plaintiff in a CWA citizen suit—with that of an association. Under New Jersey state law, a "municipality" is defined as the "cities, towns, townships, villages and boroughs, and any municipality governed by a board of commissioners or an improvement commission." N.J. Title 1:1-2. While "association" is not defined by New Jersey statute, it reasonably takes its common meaning: an organized body of people with a common interest. Webster's New Lexicon Dictionary, 1990. Granted, most citizen suits are brought by non-profit groups or associations that represent their

members—the Sierra Club, for example. But here, USR is a municipality—a governmental body. It is not a group of citizens who banded together because they want to belong to an "Upper Saddle River Residents Club." The citizens of USR do not have to "join" the municipality; they simply have to live there. USR, then, is not a representational association. Courts recognize such an important distinction and do not allow a municipality to assert standing based on the doctrine of associational standing. See, e.g., Borough of Carlstadt v. U.S. Army Corps of Eng'rs, No. 05-2771, 2006 WL 305314, at *6 (D.N.J. Feb. 8, 2006) (municipal plaintiff abandoned any reliance on the injuries to its "members" and failed to rebut the defendant's arguments that such "member"-based allegations are insufficient to confer standing). Consequently, "association standing" case law is inapplicable here, and USR may not bring suit on behalf of its citizens as an association may do on behalf of its members.[2] Thus, all references in the Amended Complaint to "residents" of USR (see, e.g., Am. Compl. ¶¶ 10, 17, and 47) must be disregarded, as well when considering USR's standing; they add nothing to USR's legal position.

USR also may not rely on the doctrine of *parens patriae* for its own standing. Under that theory, which has been applied to states suing in their quasi-sovereign capacity, states have been accorded standing to vindicate injury or threat of injury that affects, or could potentially affect, the safety and welfare of its citizens. See, e.g., Hawaii v. Standard Oil Co., 405 U.S. 251, 257-260 (1972). In contrast, it has been held that municipalities (including cities) generally do not have *parens patriae* standing. City of New York v. Heckler, 578 F. Supp. 1109, 1123 (S.D.N.Y.,

[2] An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington State Apple Advertising Comm., 432 U.S. 333, 343 (1977).

1984) (citing California v. Auto. Mfrs. Ass'n, Inc., 481 F.2d 122 (9th Cir. 1973), *cert. denied,* 414 U.S. 1045 (1973)); City of Hartford v. Town of Glastonbury, 561 F.2d 1032, 1046-47 (2d Cir. 1976), *rehearing en banc,* 561 F.2d 1048 (2d Cir. 1977), *cert. denied,* 434 U.S. 1034 (1978); see also Colorado River Indian Tribes v. Town of Parker, 776 F.2d 846, 848 (9th Cir. 1985) (cities "cannot sue as *parens patriae* because their power is derivative and not sovereign"). The Heckler court went on to explain that because the municipality in that case had standing to sue for injury to its own interests, its standing on *parens patriae* grounds need not be addressed. Heckler, 578 F. Supp. at 1123. Similarly, USR has the capacity to sue for injury to its own interests without the use of *parens patriae*. However, it has failed to do so here.

Even if this Court were to allow USR to rely on the doctrine of *parens patriae*, USR has failed to satisfy that test. In its recent "global warming" decision, the U.S. Supreme Court found that Massachusetts met the injury-in-fact requirement because the state had alleged a particularized injury in its capacity as a landowner due to the loss of state-owned coastal property from sea level rise. While the Court held that a state may act as *parens patriae* for its citizens, the Court still required some direct injury to property owned or regulated by the State. Massachusetts et al. v. U.S. Environmental Protection Agency, ___ U.S. ___, 127 S. Ct. 1438, No. 05-1120, slip op. at 19, n.19 (Apr. 2, 2007). In contrast, USR is a municipality, not a state, and does not even allege any such direct harm to Lyons Park from the District's alleged sewage discharges. USR only claims that its citizens' use and enjoyment of the park has been harmed—which is insufficient to meet the rigorous test for Article III standing.

B. The injuries alleged by USR are vague and insufficient to meet the requirement of showing "injury-in-fact."

Separate and apart from USR's obligation to allege harm to its own interests which is different from that of its residents, USR bears the burden of proving it has suffered an injury-in-fact that is concrete and particularized as well as actual and imminent. Lujan, 504 U.S. at 560. "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Lujan, 504 U.S. at 563 (quoting Sierra Club v. Morton, 405 U.S. 727, 734 (1972)). USR has failed to allege this here.

USR must show "not injury to the environment but injury to [itself]." Laidlaw, 528 U.S. at 181. In a case affirming an appeal from the Second Circuit, the Supreme Court expanded on the nature of the requisite injury in fact:

> A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . [T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties . . . [T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.

Warth, 422 U.S. at 499-501 (internal quotations omitted) (emphasis added).

USR's only clearly stated interests appear to be Lyons Park and the "utility" of Saddle River (Am. Compl. ¶¶ 10 and 26, respectively). The park only seems important because USR residents recreate there, not because USR has anything to gain or lose because of water quality. The "utility" of the river is such a vague phrase that, in effect, it adds nothing to the allegations. Instead of showing the Court injuries caused by and directly related to the District's alleged sewage releases, USR impermissibly relies on third parties—its residents—to claim standing of its own.

As mentioned, USR has not alleged injury to any of its proprietary interests, to its own

employees and officers, or to its governmental interests. For example, there are no allegations that the USR's employees or contractors could not maintain the Park due to the alleged discharges, that raw sewage from the District's system actually migrated onto the Park, or that USR must expend funds to address alleged sewage discharges that may have impaired the use and enjoyment of the Park. This case stands in stark contrast to a recent case where one municipality fighting a new increased passenger facility fee met its standing burden by documenting how its *own* employees and officers on business travel would have to pay the very fee that the municipality was fighting. Village of Bensenville v. F.A.A., 376 F.3d 1114, 119 (D.C. Cir. 2004).

The only "distinct and palpable" injuries alleged in the Amended Complaint relate to water quality of Saddle River that allegedly affect the use and enjoyment of that River by USR's *residents*. For example, the Amended Complaint alleges that some of its residents do not recreate in areas of Lyons Park "closest to the River" (Am. Compl. at ¶10), that the quality of the Saddle River "directly affects the health, recreational, aesthetic, commercial, and environmental interests of USR's residents" (Am. Compl. at ¶17), and that the interests of these *residents* "are being, and will be, adversely affected by Defendants' failure to comply with the requirements of the Clean Water Act." Id.

However, these allegations of harm to Saddle River's water quality do not meet the requirement that "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity." Lujan, 504 U.S. at 565-566. The Amended Complaint does not allege that USR itself actually uses the Saddle River in any way. There is no allegation, for example, that USR, as a municipal entity, uses the water of the Saddle River for providing drinking water to its residents, maintains a public bathing beach for its residents, or oversees

boating and other water recreational uses of the River for its residents—and that the District's alleged discharges are somehow impeding such uses. Rather, USR's alleged concerns regarding water quality impacts to its residents are exactly the type of reliance on the legal rights and interests of third parties that the Warth Court found objectionable.

C. USR cannot establish a causal connection between its alleged injuries and the District's alleged discharges.

Another element in standing analysis is the "causal connection between the injury and conduct complained of," with the injury being fairly traceable to the challenged action of the defendant. Lujan, 504 U.S. at 560. Here, USR has failed to show sufficiently a nexus between its alleged injuries and the District's purported violations of the CWA.

Showing "traceability" is so formidable a task that USR does not even raise it in its Amended Complaint. While the District recognizes CWA case law holding that "there is no need to prove with scientific certainty that defendant's actions caused the harm suffered by plaintiff," Mancuso v. Consolidated Edison Co. of New York, 130 F. Supp. 2d 584, 592 (S.D.N.Y.,2001), that does not mean that USR can establish causation merely by listing alleged violations. Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3rd Cir.), *cert. denied*, 111 S.Ct. 1018 (1990) ("a permit exceedance alone is not sufficient" to satisfy the "fairly traceable" prong of standing requirements).

Indeed, there is considerable evidence in the public record of other potential causes of the alleged contamination of the Saddle River that are much more credible than the unsubstantiated allegations aimed at the District. The Saddle River flows through an area where run-off from

USR's own oily streets and fertilized lawns fouls the water,[3] and where the N.J. Department of Environmental Protection lists stormwater, geese, and wildlife as potential sources of water pollution.[4] "The greater number of uncertain links in a causal chain, the less likely it is that the entire chain will hold true." Florida Audubon Society v. Bentsen, 94 F.3d 658, 670 (D.C. Cir. 1996). With so many sources of contamination, it is highly questionable whether USR will be able to carry its burden proving causation.

Further, these other publicly documented causes of pollution in the Saddle River raise a question whether USR has even met the statutory requirements of pleading a CWA cause of action under Section 505, the Citizen Suit provision. "To establish that a CWA violation has occurred, plaintiffs must show a discharge of pollutants into navigable waters from a 'point source.'" Concerned Area Residents for The Environment v. Southview Farm, 834 F. Supp. 1410, 1417 (W.D.N.Y. 1993) (citing 33 U.S.C. §§ 1311(a), 1362(12). A "point source" is defined as "any discernible, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). USR's First Claim for Relief recites the elements of a violation under Section 402 of the CWA, 33 U.S.C. § 1342, that is intended to regulate end-of-pipe effluent, alleging that "unpermitted discharges . . . have resulted in the presence" of certain contaminants in the Saddle River. (Am. Compl. ¶¶ 33 and 34.) Yet, it is even more plausible that many of these contaminants are the result of diffuse non-point discharges such a sediment run-off emanating from property within the jurisdiction of USR itself or from waterfowl and

---

3 See *Upper Saddle River Borough Bulletin* (Summer 2006), *available at* http://www.usrtoday.com/bulletin/0706.pdf (last visited Apr. 16, 2007).

4 N.J. DEP'T OF ENVTL. PROT., *Amendment to the Northeast Water Quality Management Plan* 46, *available at* http://www.state.nj.us/dep/watershedmgt/DOCS/TMDL/june2006/Northeast%20FC.pdf (fecal coliform in West Branch of Saddle River potentially comes from stormwater, geese, and wildlife) (last visited Apr. 16, 2007).

other wild animals that use the river. It has been held that the CWA "is not meant to prohibit 'naturally-induced, random run-off of pollutants.'" Southview Farm, 834 F. Supp. at 1418. Thus, there is credible evidence that the harm USR alleges here to meet the Article III standing requirements may not even provide a cause of action under the Citizen Suit provision of the CWA that is premised on violations of the Section 402 relating to point sources.

Based upon the foregoing, USR does not have standing to allege CWA claims against the District. As such, those claims must be dismissed.

## POINT II

## BECAUSE USR DOES NOT HAVE STANDING UNDER THE CWA, THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER USR'S STATE LAW CLAIMS BUT RATHER SHOULD DISMISS THEM.

In the event the Court dismisses USR's Clean Water Act claim for lack of standing as discussed above, it is respectfully submitted that the Court's exercise of supplemental jurisdiction over USR's remaining state law claims would be inappropriate. As this Court previously explained: "Pendent claim jurisdiction[5] presumes the existence of a claim over which the court has federal jurisdiction, and another claim involving the *same parties* lacking federal question or diversity jurisdiction." In re Investors Funding Corp. of N.Y. Secs. Litig., 523 F. Supp. 550, 560 (S.D.N.Y. 1980) (emphasis supplied). The exercise of pendent jurisdiction over a non-federal claim is appropriate if (1) the court has the authority under Article III, § 2 of the Constitution to assert jurisdiction, "measured by whether the pendent claim and a 'substantial' federal claim derive from a common nucleus of operative facts"; and (2) the court, in its discretion, determines to exercise pendent jurisdiction based upon considerations of judicial economy, convenience and

[5] In 1990, the doctrine of pendent jurisdiction and the doctrine of ancillary jurisdiction were codified and given the collective name of "supplemental jurisdiction" in 29 U.S.C. § 1367. "Pendent jurisdiction" and "supplemental jurisdiction" will be used interchangeably in Point II.

fairness to the parties. Id. (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)). (emphasis added). "However, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state law claims should be dismissed as well.'" Id. (quoting Gibbs, 383 U.S. at 726). Thus, in Investors, the court determined that there could be no pendent claim jurisdiction by plaintiffs whose federal claims had been dismissed. Id.

Similarly, in New York v. Niagara Mohawk Power Corp., 263 F. Supp. 2d 650 (W.D.N.Y. 2003), the court declined to exercise supplemental jurisdiction over state law claims against nine defendants when the court had dismissed plaintiffs' federal Clean Air Act claim against them, notwithstanding that the court did not dismiss the Clean Air Act claim against another defendant, Niagara Mohawk Power Corp. ("Niagara Mohawk"), and decided to exercise supplemental jurisdiction over the state law claims asserted against Niagara Mohawk. 263 F. Supp. 2d at 669-70. In so doing, the Court noted that the litigation was in its infancy; there had been no discovery and no protracted pretrial litigation; the facts pertaining to the claims against the nine defendants did not overlap with those against Niagara Mohawk; and judicial economy would not be served by including the nine defendants in the litigation. Id. at 670.

Here, in the event the Court dismisses USR's CWA claim, it is respectfully submitted that it should not exercise supplemental jurisdiction over USR's state law claims. As previously mentioned, supplemental jurisdiction presumes the existence of a federal claim and another non-federal claim involving the same parties. USR cannot "piggy back" onto the Individual Plaintiffs' CWA claims for purposes of supplemental jurisdiction. Moreover, as in Niagara Mohawk, this litigation is in its infancy; there has been no discovery or protracted pretrial litigation; and judicial economy would not be served by including USR in the action.

## CONCLUSION

For the foregoing reasons, defendant Rockland County Sewer District #1 respectfully requests that the Court dismiss all claims asserted against it by plaintiff Borough of Upper Saddle River.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

By ______________________________

James V. Marks (JM 6257)
Roseann Bassler Dal Pra (RBD 4919)
195 Broadway
New York, NY 10007
(212) 513-3200 Phone
(212) 385-9010 Fax

Lawrence R. Liebesman (Admitted Pro Hac Vice)
Steve Kelton (Admitted Pro Hac Vice)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Ave. NW
Washington, DC 20006
(202) 955-3000 Phone
(202) 955-5564 Fax

Counsel for Defendant
Rockland County Sewer District #1

# 4466911_v3