# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................1
PERTAINING TO THE DISTRICT

FACTUAL AND PROCEDURAL BACKGROUND.........................................4
PERTAINING TO THE VILLAGE

POINT I      ......................................................................................................5
     THE DISTRICT'S CONCESSION THAT THE INDIVIDUAL
     PLAINTIFF'S HAVE STANDING TO MAINTAIN THEIR
     CLAIMS SHOULD END THE COURT'S STANDING
     ANALYSIS

POINT II      .....................................................................................................6
     SINCE USR HAS SUFFICIENTLY ALLEGED THE
     NECESSARY ELEMENTS PURSUANT TO THE *VALLEY*
     *FORGE* TEST, USR HAS THE REQUISITE STANDING
     NECESSARY TO BRING THIS SUIT BEFORE THIS
     COURT

     a. INJURY-IN-FACT ..................................................................8

     b. FAIRLY TRACEABLE...........................................................11

     c. REDRESSABILITY ..............................................................13

POINT III      ..................................................................................................14
     SINCE USR HAS ASSOCIATIONAL STANDING, IT HAS
     A SEPARATE AND DISTINCT ADDITIONAL BASIS FOR
     STANDING NECESSARY TO BRING THIS SUIT BEFORE
     THIS COURT

POINT IV      ..................................................................................................17
     THIS COURT SHOULD EXERCISE SUPPLEMENTAL
     JURISDICTION OVER USR'S STATE LAW CLAIM

POINT V     ...................................................................................................19
  PLAINTIFFS HAVE STATED A CAUSE OF ACTION:  THE
  ALLEGATIONS IN THE AMENDED COMPLAINT WHICH
  HAVE NOT BEEN ADDRESSED BY THE VILLAGE


POINT VI     ..................................................................................................22
AIDING AND ABETTING IS A VIABLE THEORY THAT MAY BE USED IN
RELATION TO THE CLEAN WATER ACT THEREBY WARRANTING DENIAL OF
THE VILLAGE'S MOTION FOR DISMISSAL


CONCLUSION...................................................................................................23

.

## TABLE OF CASES

*Arbor Hill Conc. Citizens Neigh. Assoc. v. County of Albany*,................................6
2003 WL 21524820 *4(N.D.N.Y 2003)

*Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004).......................16

*Building and Construction Trades Council of Buffalo v. Downtown*..........................15, 16
*Development, Inc.*, 448 F.3d 138 (2d Cir. 2006)

*City of New Rochelle v. Town of Mamaroneck*,.................................................9
111 F.Supp.2d 353 (S.D.N.Y. 2000)

*City of New York v. Hacker*, 578 F.Supp. 1109 (S.D.N.Y. 1984) ......................16

*City of Reynoldsburg v. Browner*, 834 F.Supp. 963 (S.D. Ohio 1993)...................9, 10, 12

*City of Sausalito v. O'Neil*, 386 F.3d 1186, 1199 (9th Cir. 2004) ......................17

*Clinton v. City of New York*, 524 U.S. 417, 432 (1998).........................................5

*Colorado River Indian Tribes v. Town of Parker*,.................................................17
776 F.2d 846, 848 (9th Cir. 1985)

*Conely v. Gibson*, 355 U.S. 41, 45-46 (1957).................................................19

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,.........................11
438 U.S. 59, 75 n. 20 (1978)

*Friends of the Earth v. Consolidated Rail Corp.*,.................................................8
768 F.2d 57, 61 (2d Cir. 1985)

*Friends of the Earth v. Laidlaw*, 528 U.S. 167, 182 (2000) ...........................8, 9

*Gear, Inc. v. L.A. Gear California, Inc.*, 637 F.Supp. 1323, 1333 (S.D.N.Y. 1986).........20

*Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ......................19

*Grant v. The City of New York*,.................................................................19, 20
No. 91 Civ. 4266, 1992 WL 77562, at *4 (S.D.N.Y. March 25, 1992)

*Hayes v. New York City Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996) ..................19

*Houlton Citizens' Coalition v. Town of Houlton*, 175 F3d. 178, 183 (1st. Cir. 1999) .........5

*Hunt v. Washington State Apple Advertising Comm.*, ..............................14, 15, 16, 17, 23
432 U.S. 333, 343 (1977)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ...................................6

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990) ......................................6

*New York State Nat. Organization for Women v. Terry*, .................................7, 11
697 F.Supp. 1324, 1337 (SDNY, 1988)

*Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996) ..........19

*O'Neil v. Q.L.C.R.I.*, 750 F.Supp. 551 (D.R.I., 1990) .................................................17, 22

*Petro-Tech, Inc. v. Western Co. of North America,*..........................................................22
824 F.2d 1349, 1357 (3d Cir. 1987)

*Planned Parenthood of Idaho v. Wasden,* 376 F3d. 908, 918 (9th Cir. 2004) ....................5

*Public Interest Research Group of New Jersey, Inc. v. Powell* ....................8, 9, 11, 12, 13
*Duffryn Terminals, Inc.*, 913 F.2d 64, 71 (3rd Cir. 1990)

*Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004)....................................................7

*Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972)..................................................7, 8, 10

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ...........................................................19

*Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 106 (2d Cir. 2005)...............................15, 19

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725-29 (1966) ..........................................17

*United States v. Students Challenging Regulatory Agency Procedures,*........................8, 12
412 U.S. 669, 689 n. 14 (1973)

*Valley Forge Christian College v. Americans United for Separation* ........... 6, 7, 10-15, 23
*of Church and State*, 454 U.S. 464 (1982)

*Warth v. Seldin*, 422 U.S. 490, 501 (1975)....................................................7, 8, 11, 13, 14

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the notice of motion to dismiss filed by Defendant, County Sewer District # 1 (hereafter the "District" or "Defendant"), *solely* as against Plaintiff, Borough of Upper Saddle River (hereafter "USR" or "Plaintiff"). Contrary to the District's contention, under the facts of this case, it is respectfully submitted that USR has the requisite standing necessary to bring this suit before the Court such that the District's motion should be denied in its entirety.

This Memorandum of Law is also submitted in opposition to the notice of motion to dismiss and for summary judgment filed by Defendant, Village of Airmont (hereafter "Village" or "Defendant"), as against *all* Plaintiffs. Contrary to the Village's contention, the Plaintiffs' Amended Complaint properly states a cause of action in which there is a genuine issue of material fact such that the Village's motions should be denied in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND PERTAINING TO THE DISTRICT

The relevant factual and procedural issues germane to this motion are easily set forth.[1] On or about January 5, 2007, USR filed a Complaint against the District as well as the Village (Exhibit "A"). The District joined issue by the filing of its Answer to the Complaint (Exhibit "B"). Thereafter, and subsequent to a judicial conference attended by all parties on March 12, 2007, USR prepared and filed an Amended Complaint dated April 10, 2007, against the District and the Village (Exhibit "C"). This amendment was

---

[1] References to exhibits refer to those exhibits attached to the accompanying affidavit of Michael K. Burke, Esq.

timely made within the time period set forth in the scheduling order for amending pleadings. (Ex. D Scheduling Order)

The Amended Complaint is brought under the Federal Water Pollution Control Act (hereafter "Clean Water Act") as well as under New York State common law claims for nuisance (private and public) and trespass (Exhibit "C", ¶¶ 1, 43-45, 48-50, 52-53). This Court's subject matter jurisdiction over the Clean Water Act claims and federal question jurisdiction are pursuant to, respectively, 33 U.S.C. § 1365 (a)(1) and 28 U.S.C. § 1331 (Exhibit "C", ¶ 3). Further, jurisdiction over the state law claims is sought via supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (Exhibit "C", ¶ 3).

USR alleges that it "is a municipality under the laws of the State of New Jersey" whose border "abuts the Village of Airmont"; that it is a " 'citizen' within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act"; and that it "owns park land known as 'Lyons Park' …which abuts the Saddle River" (Exhibit "C", ¶¶ 8-10). USR further alleges that the Saddle River "…its tributaries, and adjacent associate wetlands are waters of the United States within the meaning of the Clean Water Act" and that the Saddle River "…which flows through the Village of Airmont and [USR] and its surrounding areas directly affects the health, recreational, aesthetic, commercial, and environmental interests of USR's residents" (Exhibit "C", ¶ 17).

The District, it is alleged, is "a county agency responsible for properly operating and maintaining interceptors and pumping stations owned by [the District] in the system and all sewers within its boundaries"; that the District has "discharged, and upon information and belief, [continues] to discharge, pollutants from manhole(s) at or adjacent to Cherry Lane, South Monsey Road, and in the vicinity of the Saddle River

2

Valley Swim Club and other areas [with the District] into navigable waters without the authorization of a [State Pollution Discharge Elimination System] permit"; and that each such unpermitted discharge constitutes a separate violation of the Clean Water Act (Exhibit "C", ¶¶ 16, 37, 39-40). In addition to setting forth specific dates of unpermitted discharges in paragraph "35", the Amended Complaint sets forth with specificity that such unpermitted discharges includes "… raw sewage…; nutrients, including nitrogen and phosphorous; settleable, suspended and dissolved solids,…; salts; metals solid waste; pathogens; disinfectants…; and feminine products." (Exhibit "C", ¶ 33). Finally, such unpermitted discharges "…have resulted in the presence of distinctly visible floating or settleable solids in the water, as well as, suspended solids, deposits of sludge and silt, bad odors, materials harmful to aquatic life, distinctly visible color, and other conditions that alter the integrity of such waters". (Exhibit "C", ¶ 34). The Amended Complaint also identifies several individuals who live near or in the immediate vicinity of the Saddle River as well as recites various health, recreational, aesthetic, environmental or economic interests which have been adversely affected by, *inter alia,* the District's actions including offensive smells, fear of contact to waters containing sewage, inability to use and enjoy one's property, inability to fish and reduction as to frequency and manner of use of the Saddle River. (Exhibit "C", ¶¶ 11- 15). USR seeks, *inter alia,* declaratory relief, injunctive relief and civil penalties. (Exhibit "C", ¶ 2 and Request for Relief at pp. 13 and 14).

In lieu of preparing and filing an Answer to the Amended Complaint, the District has moved, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss all claims asserted *solely* by USR but not the other plaintiffs against the District. Specifically, the District purports

3

that USR lacks standing to assert its claims as against the District under the Clean Water

Act and, further, that this Court should not exercise supplemental jurisdiction over USR's

state law claims (*see* District's Memorandum of Law, p. 5). The District did not move to

dismiss the individual plaintiffs' Clean Water Act claims. The District concedes by its

failure to move against the individual plaintiffs' Clean Water Act claims that at least at

this stage of the litigation, the individual plaintiffs have standing to maintain their claims.

For the reasons set forth below, the District's motion should be denied in its entirety.


### FACTUAL AND PROCEDURAL BACKGROUND PERTAINING TO THE VILLAGE

In the interest of judicial economy, the factual and procedural background

pertaining to the District set forth on pages 1 thorough 3 are incorporated by reference as

they relate to the Village. Further, the Saddle River is a valuable resource to the

Plaintiffs' community for more than simply recreational and aesthetic purposes.

However, the quality of the Saddle River has been decreasing as a result of those actions

taken by, *inter alia,* the Village, which is evidenced by discharges of raw sewage into the

river. Its contamination has brought both the loss of clarity and an odor of sewage, not to

mention the fear of disease and the discontinuance of its use by residents and non-

residents of USR.

In Plaintiffs' Amended Complaint, they allege that the Village is "a municipal

corporation organized for the purpose of exercising the duties and prerogatives of local

government and the administration of public affairs which have been conferred upon

them by the laws of the State of New York." (Exhibit "C", ¶ 15). While the District is

responsible for operating and maintaining the wastewater collection and treatment

system, the Village, upon information and belief, has the "authority to provide sewer services to its residents and to approve sewer use fees and connections to the District to fund the operation and maintenance of the sewer system and to ensure compliance with applicable laws and regulations." *Id.* Continuing to approve sewer connections aids and abets the District's continuous violations of the Clean Water Act.

The Village has moved, pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), to dismiss all claims against it which are contained in the Amended Complaint. More specifically, it claims that it is not liable for the discharges into the Saddle River because it does not own, control or operate the wastewater collection and treatment facility or system. *See,* Village of Airmont's Memorandum of Law. For the reasons set forth below, the Village's motion should be denied in its entirety.


## ARGUMENT

### POINT I

### THE DISTRICT'S CONCESSION THAT THE INDIVIDUAL PLAINTIFF'S HAVE STANDING TO MAINTAIN THEIR CLAIMS SHOULD END THE COURT'S STANDING ANALYSIS

Courts have refrained from a standing analysis once one plaintiff has established standing to assert a claim. *Clinton v. City of New York,* 524 U.S. 417, 432 (1998); *Houlton Citizens' Coalition v. Town of Houlton,* 175 F3d. 178, 183 (1st. Cir. 1999)("It is a settled principle that when one of several co-parties (all whom make similar arguments) has standing, an appellate court need not verify the independent standing of others.); *Planned Parenthood of Idaho v. Wasden,* 376 F3d. 908, 918 (9th Cir. 2004) "where the legal issues are fairly raised by one plaintiff who has standing to bring suit the Court need

not consider the standing of the other plaintiffs). Lower courts in this Circuit have

similarly found that if one plaintiff has standing to maintain a claim and, therefore, the

court has proper federal jurisdiction, then the Court need not conduct any further standing

analysis for the other plaintiffs. *Arbor Hill Conc. Citizens Neigh. Assoc. v. County of*

*Albany,* 2003 WL 21524820 *4 (N.D.N.Y 2003) Here, the District has not moved to

dismiss the individual plaintiffs claims and concede, at least at this stage of the litigation,

that the individual plaintiffs have standing to maintain all of their claims.  However, for

the reasons developed in greater detail below, it is clear that USR has standing to

maintain its claims.


### POINT II

**SINCE USR HAS SUFFICIENTY ALLEGED THE NECESSARY ELEMENTS PURSUANT TO THE *VALLEY FORGE* TEST, USR HAS THE REQUISITE STANDING NECESSARY TO BRING THIS SUIT BEFORE THIS COURT**

USR concedes that since it is the party invoking federal jurisdiction, it has the

burden of establishing that this Court has jurisdiction over its Clean Water Act claims as

against the District. The degree and manner of evidence required to satisfy this burden is

dependent upon the stage of litigation. *See e.g., Lujan v. Defenders of Wildlife,* 504 U.S.

555, 561 (1992). The present matter is at the early onset of the pleading stage. At the

pleading stage, "…general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations

embrace those specified facts that are necessary to support the claim". *Lujan, supra* at

561 (citation to *Lujan v. National Wildlife Federation,* 497 U.S. 871, 889 (1990)).

Further, when dealing, as in the present matter, with a motion to dismiss for lack of

standing, this Court must not only accept as true all material allegations set forth in the Amended Complaint, it must also construe such allegations in a light most favorable to USR as the non-moving party. *See e.g., Warth v. Seldin,* 422 U.S. 490, 501 (1975); *Raila v. United States,* 355 F.3d 118, 119 (2d Cir. 2004); *New York State Nat. Organization for Women v. Terry,* 697 F. Supp. 1324, 1337 (SDNY, 1988). Finally, when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila, supra* at 119 (citation omitted).

A party has standing to sue if it "has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy,…". *Sierra Club v. Morton,* 405 U.S. 727, 731-32 (1972). In *Valley Forge Christian College v. Americans United For Separation of Church and State,* 454 U.S. 464 (1982), the Supreme Court articulated a test for determining whether or not a party has the requisite "personal stake" in the outcome so as to warrant invocation of the Court's jurisdiction. Under Article III of the Constitution, a party who invokes the court's authority is required to show that: (1) it personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; (2) the injury fairly can be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable decision. *Valley Forge, supra,* 472. The three stages of this test are referred to as injury-in-fact, fairly traceable and redressability.

### a. Injury-in-Fact

The injury-in-fact requirement for standing obligates that a plaintiff, such as USR, allege a "distinct and palpable" injury. *See e.g., Warth, supra* at 501. However, the injury does not have to be substantial. To the contrary, "an 'identifiable trifle' will suffice." *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 71 (3rd Cir. 1990) (hereafter "*PIRG*") (quoting *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689 n. 14 (1973)). Further, a cognizable injury for purposes of standing is not limited to purely economic interests. For example, an injury that harms environmental, aesthetic or recreational interests has been held to constitute a sufficient injury-in-fact to support standing. *Friends of the Earth v. Laidlaw,* 528 U.S. 167, 182 (2000). In another example, the Court of Appeals for the Second Circuit held that an affidavit stating that an environmental group member had driven over a polluted body of water and was offended at its appearance stated a sufficient injury to justify standing. *Friends of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57, 61 (2d Cir. 1985).

In order to be considered among the injured, USR is obligated to show a connection with the geographical area that is the subject of the suit. *See also., Laidlaw supra.; Sierra Club, supra* at 734-35. In the present matter, the Amended Complaint recites that USR not only owns land near the body of water affected (i.e., the Saddle River), but that this land is park land ("Lyons Park") which "abuts the Saddle River." (Exhibit "C", ¶ 10). As a property owner, it is readily apparent that USR has vested rights and interests concerning the condition of the park land and, further, it is axiomatic that, as a municipality, it has expended sums of money to maintain and manage the park. Clearly

then, the results of the unpermitted discharges as set forth in the Amended Complaint
(e.g., including offensive smells, fear of contact to waters containing sewage, inability to
use and enjoy one's property, inability to fish and reduction as to frequency and manner
of use of the Saddle River) have a direct, concrete and particularized injury to USR, in its
capacity as a land owner, separate and apart from the residents and non-residents of USR
who utilize Lyons Park. For example, as a result of such unpermitted discharges, USR's
park land is not being utilized to the same degree "...particularly in the areas closest to
the river." (Exhibit "C", ¶ 10). Such injuries-in-fact, as set forth in the Amended
Complaint, involve health, economic, recreational, aesthetic and environmental interests
of USR as land owner which are being adversely affected (and, upon information and
belief, are continuing or are reasonably likely to continue) by the District's actions
(Exhibit "C", ¶¶ 10, 33-41). Injury to aesthetic and recreational interests due to polluted
waterway satisfies injury-in-fact requirement for standing under the Clean Water Act.
*Friends of the Earth v. Laidlaw*, 528 U.S. 167, 182 (2000); *see also, PIRG, supra* at 71-
72, *cert. denied* 498 U.S. 1109 (1991); *City of New Rochelle v. Town of Mamaroneck*,
111 F.Supp.2d 353 (S.D.N.Y. 2000) (city (i.e., a municipality) sufficiently alleged an
injury-in-fact, personal stake in the outcome of the litigation so as to warrant invocation
of the court's jurisdiction to challenge the town's ordinance requiring town board to
review and approve major development projects in areas adjacent to the town).

   This Court's attention is respectfully directed to *City of Reynoldsburg v. Browner*,
834 F.Supp. 963 (S.D. Ohio 1993), an action arising under the Clean Water Act. As
plaintiff, the City of Reynoldsburg (a municipal corporation and hereafter the "City")
alleged that defendant agencies failed to perform certain duties required by the Clean

Water Act; that such duties relate to the actions "to prevent, control and abate the water

pollution in the Scioto River Basin area"; and the City sought injunctive and declaratory

relief. *Id.* at 965. The City is within the area of the Scioto River Basin and its drainage

basin. *Id.* at 965. Thereafter, two separate water and sewer districts were granted

permissive intervention; both districts having already been engaged in disputes with the

City and each claiming they would be adversely affected in the City would prevail in its

case. *Id.* at 966. Eventually, all defendants moved for dismissal pursuant to Fed. R. Civ.

P. 12 arguing, *inter alia,* that the City "lacks standing to advance the claims". *Id.* at 967.

Addressing the standing issue, the District Court recited the three prong test enunciated

by the Supreme Court in *Valley Forge, supra,* and, when addressing the injury-in-fact

requirement, stated that:

> In order to be considered among the injured, the City must
> show a connection with the geographical area that is the
> subject of the suit. [citation to *Sierra, supra*]. The
> complaint must properly allege that the plaintiff resides
> in the vicinity of, **or owns property near the body of water
> affected by the defendants' actions.** The complaint must
> also allege that the health, economic, recreational, aesthetic
> or environmental interests of the plaintiff are being and will
> be adversely affected by these actions (citation omitted).
> *Id.* at 970 (emphasis added).

Finding that the City's complaint alleged both a "sufficient geographical connection to

The Scioto River Basin" and "economic injuries sufficient to satisfy the requirements of

Article III", the court determined that the first prong of the *Valley Forge* test was

satisfied. *Id.* at 970.

In the present matter, USR has set forth in its Amended Complaint that not only

does it own park land near the Saddle River, but that such land abuts the river.

Paraphrasing *City of Reynolds,* USR has clearly demonstrated that it owns property near

10

the body of water affected by the District's actions. Further, the Amended Complaint also sets forth that the District's actions have resulted in adversely affecting USR's health, recreational, aesthetic, environmental and economic interests pertaining to the park land it owns. Put another way, USR has been and continues to be injured by the District's failure to fulfill its legal obligation to abate the unpermitted discharges. As previously stated, this Court must accept these factual allegations as true, and draw all reasonable inferences in favor of USR. *See Warth, supra; New York State Nat. Organization for Women, supra.* As such, USR has satisfied this first prong of the *Valley Forge* test.

### b. Fairly Traceable

The District next contends that USR can not meet the second prong of the *Valley Forge* test because it has not sufficiently alleged that its injuries are fairly traceable to District's conduct. USR is not required, at this stage of litigation, to show causation with "absolute scientific rigor". *PIRG, supra* at 72. Rather, in order to satisfy this prong, the District's conduct need only be "fairly traceable": is there "a substantial likelihood that the [District's] conduct caused [USR's] harm [?]" *PIRG, supra* at 72 (citation to *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 75 n. 20 (1978)).

USR has set forth in its Amended Complaint that the District has discharged pollutants "at or adjacent to Cherry Lane, South Monsey Road, and in the vicinity of the Saddle River Valley Swim Club...into navigable waters without authorization of a SPDES permit." (Exhibit "C", ¶ 37). Further, the Amended Complaint alleges that the District has discharged such pollutants from a "point source" as defined by the Clean Water Act as well as sets forth at least fifteen (15) different dates involving unpermitted

11

discharges (Exhibit "C", ¶¶ 22-23, 30-37). Finally, in addition to describing the nature of the discharges, USR also alleges that the District's discharges have resulted in "distinctly visible floating or settleable solids in the waters…". (Exhibit "C", ¶ 34). These allegations unmistakably indicate a substantial likelihood that USR's injuries are earmarked to the District's conduct since it is the District that is responsible for the "manhole(s)", "pumping stations" and "sewers" within its boarders. (Exhibit "C", ¶¶ 16, 37). This is sufficient to satisfy the second prong under *Valley Forge*. *See e.g., City of Reynoldsburg, supra* at 970 ("An allegation of likely causation is all that is necessary to satisfy the 'fairly traceable" element of the *Valley Forge* test."). Put another way, USR has sufficiently pled that the District: (1) discharged pollutants greater than allowed by its permit; (2) into a river that USR has an interest that is and may continue to be adversely affected by such pollutants; and (3) such pollutants cause or contribute to the injuries alleged by USR. *See e.g., PIRG, supra* at 73.

The District's reference to "other potential causes of the alleged contamination of the Saddle River" is unavailing and not germane to the pending motion. To the contrary, it is well-settled that in a Clean Water Act case, there may well be several parties and/or non-parties discharging into the affected waterway. However, as the plaintiff, USR is not required to sue every discharger in one action. *See e.g., United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 689 n. 14 (1973)); *PIRG, supra* at 72 ("In order to obtain standing, plaintiffs need not sue *every* discharger in one action, since the pollution of any one may be shown to cause some part of the injury suffered.") (emphasis in original).

USR has therefore satisfied this second prong of the *Valley Forge* test.

12

### c. Redressability

To meet the final prong of the *Valley Forge* test, USR must allege that its injuries are "likely to be redressed by a favorable decision." This inquiry focuses on whether USR will "benefit in a tangible way from the court's intervention." *Warth, supra* at 508. Stated another way, the redressabilty prong "focuses on the connection between the plaintiff's injury and the judicial relief sought." *PIRG, supra* at 73 (citation omitted).

In the matter at hand, USR seeks, *inter alia,* to compel the District to stop the continuing discharge of pollutants into navigable waters in violation of its SPDES permit and the Clean Water Act. (Exhibit "C", ¶ 39-41). USR's relief includes a declaration that the District has violated the Clean Water Act as well as a permanent injunction directing that the District "come into permanent, consistent compliance with the Clean Water Act, the regulations promulgated thereunder, and its SPDES permit." (Exhibit "C", ¶¶ "A" and "B" under the Request for Relief at p. 13). If, in fact, the District does perform its duties consistent with the Clean Water Act and its SPEDIS permit, then USR's Amended Complaint will be redressed in a favorable manner. As such, USR has alleged a strong enough nexus so as to establish standing. In fact, in its Memorandum of Law the District does not even contest the redressability issue. Thus, USR has satisfied the third and last prong of the *Valley Forge* test.

The allegations set forth in Amended Complaint, which this Court must take as true and consider in a light most favorable to USR as the non-movant, are such to have sufficiently alleged all three elements set forth in *Valley Forge.* Therefore, USR possess the requisite standing necessary to bring this action before this Court.

## POINT III

## SINCE USR HAS ASSOCIATIONAL STANDING, IT HAS A SEPARATE AND DISTINCT ADDITONAL BASIS FOR STANDING NECESSARY TO BRING THIS SUIT BEFORE THIS COURT

As set forth in Point I above, USR has sufficiently alleged the necessary injury-in-fact, fairly traceable and redressability elements of the *Valley Forge* test such that it has the requisite "personal stake" in the outcome so as to warrant invocation of this Court's jurisdiction. Alternatively, USR also has sufficiently alleged an independent basis for standing, namely "associational standing". In *Warth, supra,* the Supreme Court noted that:

> Even in the absence of injury to itself, an association may have standing solely as the representative of its members... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit...So long as this can be established, and so long as the nature of the claim and the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction. *Id.* at 511.

An association or organization's standing to initiate a suit on behalf of its members exists when: (1) its members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the suit. *Hunt v. Washington State Apple Advertising Comm.,* 432 U.S. 333, 343 (1977).

The first requirement for associational standing, in the present matter, is for USR's members (i.e., residents as well as non-resident members of the public, including such individuals who utilize USR's park land) to establish individual standing. Individual

14

standing, in turn, is established (as discussed in detail in Point I above), by satisfying the

*Valley Forge* tests of injury-in-fact, fairly traceable and redressability. The Amended

Complaint specifically identifies several individuals that are members of USR (i.e.,

individuals who either reside in USR or reside in the immediate vicinity of the Saddle

River) who are "citizens" within the meaning of the Clean Water Act. (Exhibit "C", ¶¶

11-14). Consistent with the three prong test of *Valley Forge*, the Amended Complaint

sufficiently pleads injury-in-fact, fairly traceable and redressability for each named

individual including, *inter alia,* that the District's conduct has resulted in such adversities

as offensive smells, fear of contact to waters containing sewage, inability to use and

enjoy one's property, inability to fish and reduction as to frequency and manner of use of

the Saddle River. This Court is to deem such pleaded allegations as true. Further, there is

no heightened pleading requirement for allegations of standing. *See e.g., Twombly v. Bell*

*Atl. Corp.,* 425 F.3d 99, 107-08 (2d Cir. 2005), *cert. granted* ___ U.S. ___, 126 S.Ct.

2965 (2006). USR has therefore adequately alleged its members would have and do have

standing to sue in their own right.

      The second requirement for associational standing is that the interests USR seeks

to protect are germane to USR's purposes. The United States Court of Appeals, Second

Circuit, recently concluded that when considering the 'germaneness' requirement of

*Hunt*, the "proper inquiry at the pleading stage is thus a limited one: A court must

determine whether an association's lawsuit would, if successful, reasonably tend to

further the general interests that individual members sought to vindicate in joining the

association and whether the lawsuit bears a reasonable connection to the association's

knowledge and expertise." *Building and Construction Trades Council of Buffalo v.*

*Downtown Development, Inc.,* 448 F.3d 138 (2d Cir. 2006)[2]. In the present mater, USR,

as a municipality, has the obligation to protect the health and well-being of all members

of the pubic, including those residents and non-residents who come into close proximity

to the Saddle River. In addition, as a land owner itself, USR has vested rights and

interests concerning the condition its own park land and those members of the public who

utilize the park. Further, the declaratory and injunctive relief requested by USR under the

Clean Water Act is related to and germane to those interests that members of USR seek to

vindicate. As a result, USR has satisfied this second element for associational standing.

The third prong of the *Hunt* test concerns claims that would require individualized

proof. The Second Circuit has stated that "where the organization seeks a purely legal

ruling without requesting that the federal court award individualized relief to its

members; the *Hunt* test may be satisfied." *Bano v. Union Carbide Corp.,* 361 F.3d 696,

714 (2d Cir. 2004). Here, USR seeks with regard to its Clean Water Act claim declaratory

and injunctive relief together with civil penalties and attorneys fees. As such, these

claims do not require the individualized proof referred to in *Hunt.* This third, and final,

prong of the *Hunt* test for associational standing is also satisfied.

Generally, a political subdivision, such as a municipality, does not have *parens*

*patriae* standing. *See e.g., City of New York v. Hacker,* 578 F.Supp. 1109 (S.D.N.Y.

1984). This Court did not address the city's standing on *parens patriae* grounds since it

found that that the municipality had standing to sue for injury to its own interests. *City of*

*New York, supra* at 1124. However, as a political subdivision, a municipality may sue to

protect its own "proprietary interests" that might be "congruent" with those of its citizens.

---

[2] Since the Trade Council failed to comply with certain pre-notice provisions of the Clean Water Act, the Second Circuit decided to vacate the District Court's judgment and remand. This fact is distinct from the present matter.

*Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846, 848 (9th Cir. 1985). In the matter at hand, USR has alleged that the District's conduct "directly affects … health, recreational, aesthetic, commercial, and environmental interests…"as a result of the Clean Water Act violations. (Exhibit "C", ¶ 17). These interests can be considered "proprietary interests" of a municipal entity. *See e.g., City of Sausalito v. O'Neil,* 386 F.3d 1186, 1199 (9th Cir. 2004) ("We hold that each of the management, public safety, economic, aesthetic, and natural resource harms constitutes injury to Sausalito's "proprietary" interests as a municipal entity.").

The allegations set forth in Amended Complaint, which this Court must take as true and consider in a light most favorable to USR as the non-movant, are such to have sufficiently alleged all three elements set forth in *Hunt* so as to provide USR with additional, independent associational standing.


**POINT IV**

**THIS COURT SHOULD EXERCISE SUPPLEMETAL JURISDICTION OVER USR'S STATE LAW CLAIM**

The concept of supplemental jurisdiction, codified in 28 U.S.C. § 1367, has its origins in the judicial doctrine of pendent jurisdiction, discussed in *United Mine Workers v. Gibbs,* 383 U.S. 715, 725-29 (1966) (hereafter "*Gibbs*"). In *Gibbs* the Supreme Court stated that "…a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative facts' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs, supra* at 725.

USR, in the present matter, alleges that this Court has subject matter jurisdiction over the Clean Water Act claims and federal question jurisdiction pursuant to, respectively, 33 U.S.C. § 1365 (a)(1) and 28 U.S.C. § 1331 (Exhibit "C", ¶ 3). As such, for those reasons recited in Points I, II and III above, this Court has original jurisdiction over USR's Clean Water Act claims. Further, USR alleges a common law state claim sounding in public nuisance as against both the District and the Village (Exhibit "C", ¶¶ 46-50). In the Amended Complaint, USR's state law claim arises out of the same operative facts underlying those violations of the Clean Water Act. It is readily apparent that the state law claim is so "related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III…". 28 U.S.C. § 1367(a). For these reasons, this Court's exercise of supplemental jurisdiction is warranted.

Finally, even if it were assumed, without deciding, that solely for purposes of the District's motion that this Court determined that it did not have original jurisdiction over USR's Clean Water Act claims (a proposition USR strenuously disagrees with), this Court is reminded that each of the five individually named Plaintiffs have alleged violations of the Clean Water Act (Exhibit "C", ¶¶ 11-41). The claim of each individual Plaintiff earmarked to the Clean Water Act largely involves the same nucleus of operative facts such that even if this Court were to dismiss the claims *solely* with regard to USR, this Court would still retain original jurisdiction of each individual Plaintiff's Clean Water Act claims. In fact, the District's pending application does not seek to dismiss any of the individual Plaintiff's claims. *See* District's Memorandum of Law, p. 5, n.1. In balancing the relevant factors such as judicial economy, convenience and fairness

18

tip in favor of this Court retaining supplemental jurisdiction over USR's state law claims. *See* 28 U.S.C. § 1367(a). *See also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("...the district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction...").


## POINT V

### PLAINTIFFS HAVE STATED A CAUSE OF ACTION: THE ALLEGATIONS IN THE AMENDED COMPLAINT WHICH HAVE NOT BEEN ADDRESSED BY THE VILLAGE

A motion made pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. Dismissal is inappropriate unless "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 106 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). On such a motion, the complaint is to be construed in "the light most favorable to the plaintiff, accepting the complaint's allegations as true." *Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001). In addition, summary judgment is proper only where there is "no genuine issue of material fact" and "when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614 (2d Cir. 1996). It is the Village's burden, as the movant, to show that no genuine factual dispute exists. *See e.g., Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). In addition the plaintiff has failed to file a statement of material facts pursuant to Local Rule 56.1. This failure warrants dismissal of Defendant Village of Airmont's summary judgment motion. *See Grant v. The City of New York*, No. 91 Civ.

4266, 1992 WL 77562, at *4 (S.D.N.Y. March 25, 1992); *Gear, Inc. v. L.A. Gear California, Inc.,* 637 F.Supp. 1323, 1333 (S.D.N.Y.1986)

Local Rule 56.1 rule was developed to aid the Court in determining whether summary judgment is warranted, and provides the following:

> (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.
>
> (b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
>
> (c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Failure to comply with Local Rule 56.1 constitutes grounds for denial of a summary judgment motion.

Notwithstanding the Village's failure to file its 56.1 Statement, in the present matter, the Village cannot satisfy a showing that Plaintiffs have failed to state a cause of action, and it has failed to address the allegations set forth in Plaintiffs' Amended Complaint in their responsive pleadings. In its Statement of Facts and Memorandum of Law, the Village refers to the Affidavit of Mayor John C. Layne to establish that it has no authority or responsibility to approve sewer connections and that it does not own, operate, manage, direct or otherwise supervise the District. *See,* Village of Airmont, Memorandum of Law and Statement of Facts, ¶ 4. While the Affidavit provides some support for the statement that the Village does not own or operate the wastewater collection and treatment system used within the Village, it does not sustain the assertion

20

that the Village has no authority or responsibility to approve sewer connections or pay fees for the sewer services. There still remains a genuine issue of material fact regarding the Village's authority in approving sewer hook ups and fees paid for sewer services.

The Village's reliance on the Affidavit of Mayor Layne is misplaced. The Affidavit states that the facility discharging the pollutants is "owned, operated, managed, directed, supervised and controlled by Rockland County Sewer District #1." *See,* Affidavit of John C. Layne. However, the Amended Complaint has not disputed this point. (Exhibit "C", ¶ 15). In fact, the Plaintiffs are not claiming that such facility is owned or operated by the Village, but contend that the Village has the authority to "provide sewer services to its residents and to approve sewer use fees and connections to the District to fund the operation and maintenance of the sewer system and to ensure compliance with applicable laws and regulations." *Id.* By continuing in such manner, the Village aids and abets the violations of the Clean Water Act by the District, the owner and operator of the facility. The Mayor's Affidavit does not address this issue, though the Village tries to incorporate the language, that the Village does not have the authority or responsibility of such connections, in its Statement of Facts and Memorandum of Law to support a dismissal. If anything, the Layne Affidavit further supports the Amended Complaint in its allegations against the District. ( Exhibit "C", ¶ 16).

The Village's Memorandum of Law and Statement of Facts are not in agreement with the Mayor Layne's Affidavit. They are not based upon personal knowledge, and do not constitute evidence or proof that the Village does not have the authority or responsibility to approve sewer connections. Therefore, the allegations contained within

Plaintiffs' Amended Complaint properly state a cause of action as they have gone unchallenged.

## POINT VI

**AIDING AND ABETTING IS A VIABLE THEORY THAT MAY BE USED IN RELATION TO THE CLEAN WATER ACT THEREBY WARRANTING DENIAL OF THE VILLAGE'S MOTION FOR DISMISSAL**

The Clean Water Act seeks to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters", and provides that the discharge of any pollutant by *any* person is unlawful. *See* 33 U.S.C. 1311(a) (emphasis added).

The theory of aiding and abetting, as it is stated in this amended complaint, has been advanced and accepted previously by other courts as promoting the goals of the Clean Water Act. *See generally O'Neil v. Q.L.C.R.I.*, 750 F.Supp. 551 (D.R.I., 1990); *U.S. v. Colvin*, 246 F.3d 676 (9th Cir. 2000). It is "a concept that can be used to interpret [who is] "in violation" under § 1365." *O'Neil, supra. See also, Petro-Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1357 (3d Cir. 1987) ("The doctrine of aiding and abetting is simply one way that an individual can violate the substantive . . . law.")

In the case at hand, Plaintiffs have alleged sufficient involvement with the sewer system by the Village, in having the authority and responsibility of providing sewer services to its residents, approving sewer use fees, and approving sewer connections to the sewer system, presenting a viable claim of aiding and abetting the violations of the Clean Water Act.

**CONCLUSION**

Contrary to the District's contention, under the facts of this case, granting the

District's motion for dismissal *solely* as against USR is inappropriate. At the current

pleading stage of litigation, USR has sufficiently pled, pursuant to the three prong test of

*Valley Forge,* injury-in-fact, fairly traceable and redressability earmarked to the District's

conduct so as to constitute standing, thereby invoking this Court's jurisdiction. In

addition, USR has alternatively sufficiently pled, pursuant to the three prong test of *Hunt,*

so as to confer associational standing. Finally, the exercise of supplemental jurisdiction

by this Court over USR's state law public nuisance claim is warranted under the facts of

this case. This Court is obligated to deem the allegations set forth in USR's Amended

Complaint as true and, further, to consider such allegations in a light most favorable to

USR as the non-movant.

Furthermore, contrary to the Village's contention, granting the Village's motion

for dismissal as against *all* Plaintiffs is also inappropriate. Mayor Layne's Affidavit does

not rebut the Plaintiffs' allegation set forth in the Amended Complaint that the Village

has the authority and responsibility to approve sewer connection and approve sewer use

fees. In addition, Plaintiffs have alleged a viable claim that the Village aided and abetted

(and, upon information and belief, continues to date to aid and abet) those violations of

the Clean Water Act as set forth in the Amended Complaint. This Court is again

obligated to deem such allegations as true and in a light most favorable to the Plaintiffs as

the non-movant.

For all of the foregoing reasons, the District's motion, filed at the pleading stages

of litigation, should be denied in its entirety since USR has the requisite standing

necessary to bring this suit before the Court. Further, the Village's motion should also be

denied in its entirety since Plaintiffs' Amended Complaint, at this pleading stage of

litigation, sets forth a set of facts in support of their claims which entitle them to relief.


Dated: May 9, 2007
      Goshen, New York


                                       BURKE, MIELE & GOLDEN, LLP

                                       Michael K. Burke (7554)
                                       *Attorneys for Plaintiffs*
                                       100 Washington Street
                                       Post Office Box 397
                                       Suffern, New York  10901
                                       (845) 357-7500