UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BOROUGH OF UPPER SADDLE RIVER,
KAREN MILLER, ROY OSTROM, MARIA FLORIO,
MARK RUFFOLO AND LINDA MCDONALD,                    07-CV-0109

                                   Plaintiffs,

          -against-

VILLAGE OF AIRMONT, ROCKLAND COUNTY
SEWER DISTRICT #1,

                                   Defendants.
--------------------------------------------------------------------X


STATE OF NEW YORK    )
                     ) ss:
COUNTY OF ROCKLAND   )


     MICHAEL K. BURKE, ESQ., being duly sworn, deposes and says:

     1.     I am a member of BURKE, MIELE & GOLDEN, LLP, attorneys for

Plaintiffs, Borough of Upper Saddle River, Karen Miller, Roy Ostrom, Maria Florio,

Mark Ruffolo and Linda McDonald (hereafter "Plaintiffs"), in the above-entitled matter.

     2.     Annexed hereto are the following exhibits:

          "A" – Plaintiffs' Complaint dated January 5, 2007

          "B" – Answer of Defendant, Rockland County Sewer District #1(hereafter
               the "District"), dated February 5, 2007

          "C" – Plaintiffs' Amended Complaint dated April 10, 2007

          "D" – Civil Case Discovery Plan and Scheduled Order

     3.     For the reasons set forth in the accompanying Memorandum of Law, your

affiant respectfully submits that: (a) Plaintiff, Borough of Upper Saddle River (hereafter

"USR"), has the requisite standing necessary to bring this suit before this Court such that the District's motion to dismiss filed *solely* as against USR should be denied in its entirety; (b) the Village of Airmont's motion for dismissal as against *all* Plaintiffs should likewise be denied in its entirety since Plaintiffs have set forth a set of facts in support of their claims which entitle them to relief; and (c) this Court order such further relief as deemed just and proper.

Dated: May 9, 2007
      Goshen, New York

 

Michael K. Burke, Esq. (MB 7554)
Burke, Miele & Golden LLP
*Attorneys for Plaintiffs*
100 Washington Avenue
Post Office Box 397
Suffern, New York 10901
(845) 357-7500

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BOROUGH OF UPPER SADDLE RIVER,

                      Plaintiff,

     v.

VILLAGE OF AIRMONT, ROCKLAND COUNTY
SEWER DISTRICT #1,

                  Defendants.

------------------------------------------------------------x

**COMPLAINT**

**JURY DEMAND**

**07 CIV. 0109**

**(MDF)**

WPY

**ECF CASE**

Plaintiff Borough of Upper Saddle River, by its attorneys Burke, Miele & Golden, LLP, alleges for its complaint herein as follows:

**STATEMENT OF THE CASE**

1.  This action is a citizens' suit brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (hereinafter "Clean Water Act"), seeking relief from Defendants' violations of the Clean Water Act.

2.  Plaintiff seeks injunctive relief, declaratory relief, civil penalties, and costs including attorney's fees.

**JURISDICTION**

3.  This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 33 U.S.C. § 1365 (a)(1) and federal question jurisdiction, 28 U.S.C. § 1331.

4.   On October 6, 2006, Plaintiff gave notice of the violations and its intent to file suit against defendants to the Administrator of the United States Environmental Protection Agency ("EPA"), to the Commissioner of the New York State Department of Environmental Conservation ("DEC"), and to the defendants, pursuant to 33 U.S.C. § 1365 (b)(1)(A) of the Clean Water Act. (attached hereto)

5.   More than 60 days have passed since the above-referenced notice was served upon defendants and the governmental parties named above, thus satisfying section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. 1365 (b)(1)(A).

6.   Neither the EPA nor the DEC has commenced and diligently prosecuted a court action to redress the violations under section 505(b)(1)(B) of the Clean Water Act, 33 U.S.C. § 1365 (b)(1)(B).

## VENUE

7.   Venue is appropriate in the Southern District of New York pursuant to Section 505 (c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1) because the source of the violations is located within this District.

## PARTIES

8.   The Borough of Upper Saddle River (hereinafter "USR") the border of which abuts the Village of Airmont is a municipality under the laws of the State of New Jersey.

9.   Plaintiff is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a).

10. Defendant Village of Airmont is a political subdivision of the State of New York, duly incorporated under the laws of the State of New York, and is a

2

"municipality" within the meaning of Section 502(4) of the Act, 33 U.S.C. § 1362(4), and a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

11. Defendant Rockland County Sewer District No. 1 ("RCSD #1") is a county agency responsible for properly operating and maintaining interceptors and pumping stations in the system and all sewers within its boundaries, and is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

12. The quality of the Saddle River which flows through the Village of Airmont and the Borough of Upper Saddle River and its surrounding areas directly affects the health, recreational, aesthetic, commercial, and environmental interests of USR's residents. The interests of USR's residents are being, and will be, adversely affected by Defendants' failure to comply with the requirements of the Clean Water Act.

13. Defendants are "persons" within the meaning of the citizen suit provisions of the Section 505 (a)(1) of the Clean Water Act, 33 U.S.C. § 1365 (a)(1).

## GENERAL ALLEGATIONS

14. Congress enacted the Clean Water Act in 1972 for the purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251. One of the specific goals of the Act was "that the discharge of pollutants into the navigable waters be eliminated by 1985." Id.

15. The Clean Water Act prohibits the discharge of pollutants from a point source to the waters of the United States, except pursuant to, and in compliance with, a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §1311(a); 33 U.S.C. §1342. The State of New York is authorized to issue State Pollutant Dischage

Elimination System ("SPDES") permits in lieu of the NPEDES permits pursuant to Clean Water Act § 492. 33 U.S.C. §1342.

16. The Clean Water Act defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

17. The Clean Water Act defines "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

18. Pipes are point sources within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(14).

19. "Waters of the United States" within the meaning of the Clean Water Act include any navigable waters or waters that are tributaries to navigable waters. 33 U.S.C. § 1362(7).

20. The Saddle River, its tributaries, and adjacent associate wetland are waters of the United States within the meaning of the Clean Water Act.

4

## FIRST CLAIM FOR RELIEF: VIOLATIONS OF THE CLEAN WATER ACT BY SPECIFIC ILLEGAL DISCHARGES TO WATERS OF THE UNITED STATES

21. The wastewater collection and treatment system owned and operated by the Village of Airmont and RCSD #1 is a "treatment works" as that term is defined in Section 212(2)(A) and (B) of the Act, 33 U.S.C. § 1292(2)(A) and (B), and a "publicly owned treatment works" as that term is defined by 40 C.F.R. §122.2 and 40 C.F.R. 403.3(q).

22. The state Department of Environmental Conservation administers the State Pollution Discharge Elimination System permit program, which issued a SPDES Permit to Defendant RCSD #1, under the authority of Section 402 of the Act, 33 U.S.C. § 1342.

23. The Saddle River, to which pollutants have been discharged is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

24. Defendants discharge water pollution into the Saddle River, and its tributaries in the form of raw sewage, which includes but is not limited to, biological material and other organic matter exerting chemical and biological oxygen demand in the waters, fecal coliform bacteria; nutrients, including nitrogen and phosphorous; settleable, suspended and dissolved solids, including toilet paper and sewerage solids; salts; metals solid waste; pathogens; disinfectants (such as permanganate); and feminine products.

25. Unpermitted discharges from the Defendants have resulted in the presence of

distinctly visible floating or settleable solids in the waters, as well as, suspended solids,

deposits of sludge and silt, bad odors, materials harmful to aquatic life, distinctly visible

color, and other conditions that alter the integrity of such waters.

26. Unpermitted discharges of wastewater to the navigable waters, of raw sewage,

have occurred on numerous occasions and include, but are not limited to:

    a.   August 23, 2006

    b.   August 24, 2006

    c.   August 25, 2006

    d.   August 26, 2006

    e.   August 27, 2006

    f.   August 28, 2006

    g.   August 29, 2006

    h.   August 30, 2006

    i.   September 1, 2006

    j.   September 2, 2006

    k.   September 3, 2006

    l.   October 31, 2006

    m.  November 6, 2006

    n.   November 8, 2006

    o.   And upon information and belief additional unreported spills from at least
September 3, 2006 to present

27. Organisms in untreated wastewater containing raw sewage can cause a

number of diseases in users of contaminated areas. These diseases include, but are not

limited to, enteric diseases such as gastroenteritis, dysentery, and cholera. All of these diseases are highly communicable.

28. The Village of Airmont and Rockland County Sewer District #1 have discharged, and upon information and belief, continue to discharge, pollutants from manhole(s) at or adjacent to Cherry Lane, South Monsey Road and other areas in the Village of Airmont and Rockland County Sewer District #1 into navigable waters without the authorization of a SPDES permit.

29. The unpermitted discharges include, without limitation, the unpermitted discharges identified in Paragraph 22 and 23(a) through (k).

30. Unless enjoined by the Court, the Village of Airmont and RCSD #1 will continue to discharge pollutants to navigable waters in violation of its SPDES permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342.

31. Each day of each unpermitted discharge of pollutants is a separate violation of Section 301 of the Act, 33 U.S.C. § 1311.

## CONTINUING VIOLATIONS

32. As of the date of the filing of this complaint, all of the violations Complained of in the October 6 2006 notice letter are continuing or are reasonably likely to continue.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court grant the following relief:

A. A judgment declaring that the Defendants have violated the Clean Water Act.

B. A permanent injunction directing Defendants to take all steps necessary to come into permanent, consistent compliance with the Clean Water Act, the regulations promulgated thereunder, and its SPDES permit

C. Award civil penalties against Defendants

D. Award Plaintiff their costs, including reasonable attorney, witness and consultant fees, as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365 (d); and

E. Award other such relief as this Court deems appropriate.

Dated: January 5, 2006

Respectfully submitted,

Michael K. Burke (MKB 7554)
Burke, Miele & Golden, LLP
100 Washington Street, P.O. Box 397
Suffern, New York  10901
(845) 357-7500

# BURKE, MIELE & GOLDEN, LLP

30 MATTHEWS STREET
SUITE 303A
POST OFFICE BOX 216
GOSHEN, N.Y. 10924
(845) 294-4080
FAX (845) 294-7673

PATRICK T. BURKE
ROBERT M. MIELE *
RICHARD B. GOLDEN
MICHAEL K. BURKE

PHYLLIS A. INGRAM **
DENNIS J. MAHONEY, III
F. MICHELE COOPER

JOSEPH P. McGLINN (1941-2000)

\* ADMITTED IN NEW YORK & NEW JERSEY
\*\* ADMITTED IN NEW YORK & CONNECTICUT

ROCKLAND COUNTY OFFICE:
100 WASHINGTON AVENUE
POST OFFICE BOX 397
SUFFERN, N.Y. 10901
(845) 357-7500
(845) 357-7321 (FAX)

REPLY TO:  ☐  ORANGE CO.
           ☐  ROCKLAND CO.

Respond to Post Office Box

October 6, 2006

Village of Airmont
Board of Trustees
P.O. Box 578
321 Route 59
Airmont, New York 10982

Rockland County Sewer District No. 1
4 Route 340
Orangeburg, New York 10962
Attn: Julius Graifman, Chairman

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

New York Dept. of Environ. Conservation
Division of Water
Sandra L. Allen, Director
625 Broadway
Albany, New York 12233

New Jersey Department of Environmental Protection
Division of Water Quality
401 East State St.
P.O. Box 029
Trenton, New Jersey 08625

Re: Notice to Sue for Unpermitted Illegal Discharges under Clean Water Act

Greetings:

We represent the Borough of Upper Saddle River, New Jersey. This letter is to advise you that we are authorized to provide you with this Notice of Intent to Sue the Village of Airmont, New York, and the Rockland County Sewer District No. 1, ("RCSD #1") on behalf of Upper Saddle River, New Jersey, and other potential citizen plaintiffs within the Village of Airmont and Upper Saddle River, for unpermitted, illegal, and continuous discharges by the Village of Airmont and Rockland County Sewer District No. 1 into the Saddle River, a federally protected waterway. This Notice is sent pursuant to 33 U.S.C. § 1365.

We hereby place you on notice, pursuant to §§ 505(a) and (b) of the Clean Water Act, ("CWA") 33 U.S.C. §§1365(a) and (b), that we intend to sue the Village of Airmont and the RCSD #1 for violating, and continuing to violate, effluent standards and limitations as defined by § 505(f) of the CWA, 33 U.S.C. § 1365(f), by discharging pollutants into waters of the United States without a permit as is required under CWA §301(a), 33 U.S.C. §1311(a).

The CWA prohibits the discharge of pollutants from a point source to the waters of the United States except pursuant to and in compliance with a permit.[1] *See*, 33 U.S.C. § 1311(a); 33 U.S.C. § 1342. The Act defines "pollutant" to include solid waste, biological materials, and sewerage. 33 U.S.C. § 1362(6). "Point source" is defined as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure…from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

We believe that the raw sewerage discharged by the Village and RCSD #1 from the locations attached contains the following pollutants: biological material and other organic matter exerting chemical and biological oxygen demand in the waters; fecal coliform bacteria; nutrients, including nitrogen and phosphorous; settleable, suspended and dissolved solids, including toilet paper and sewerage solids; salts; metals; solid waste; pathogens; disinfectants (such as permanganate); feminine products; and other materials. These discharges have resulted in the presence in the waters of distinctly visible floating or settleable solids, suspended solids, deposits of sludge and silt, bad odors, materials harmful to aquatic life, distinctly visible color, and other conditions that alter the integrity of such waters.

One of the following sites that are discharging pollutants from point sources into the waters of the United State without SPDES permits:

Raw sewerage discharges from a manhole at or adjacent to 64 Cherry Lane on dates including but not limited to:

| | |
|---|---|
| August 23, 2006 | August 29, 2006 |
| August 24, 2006 | August 30, 2006 |
| August 25, 2006 | September 1, 2006 |
| August 26, 2006 | September 2, 2006 |
| August 27, 2006 | September 3, 2006 |
| August 28, 2006 | |

---

[1] The State of New York is the delegated authority by the Environmental Protection Agency to administer the National Pollution Discharge Elimination System ("NPDES") permit program pursuant to 33 U.S.C. section 1342(b).1370. The state Department of Environmental Conservation administers the State Pollution Discharge Elimination System ("SPDES") permit program to carry out the functional equivalent of SPDES responsibilities.

The RCSD #1 operates a sewerage under a SPDES permit. Upon information and belief, the discharges described herein are not covered or are in violation of this or any other permit.

2

Our investigations have revealed that at a minimum 2.5 million gallons raw sewerage discharged and flowed into the Saddle River. During both wet and dry weather, raw sewerage has been discharged illegally on a regular basis. No SPDES permit exists allowing for this discharge.

Unless the discharges are addressed and corrected, these discharges will continue in the future. These discharges and the RCSD #1 failure to obtain new permits or modify the existing SPDES permit constitute ongoing violations of the CWA. Each day of unpermitted discharges comprises a series of separate violation of the CWA, with a discrete violation for each pollutant illegally discharged from each point source. As provided by 33 U.S.C. § 1319(d) and 40 C.F.R. §19.4 violators are subject to a civil penalty not to exceed $27, 500 (or $31,500 for violations occurring after August 19, 2002) for each such violation. At the close of the 60 day notice period, we intend to file a citizen suit under §505(a) of the Clean Water Act against the Village and RCSD #1 as owner and operator of the above-referenced point sources to seek injunctive relief from and penalties for the violations discussed herein. This notice of intent to sue covers all CWA violations during the proceeding five (5) years preceeding the date of this letter, and all future violations arising from the above referenced point source or points sources in the vicinity.

The May 10, 2006 Consent Order, purporting to address such problems, is wholly ineffective. It does not adequately provide a remedy for the continuing discharges that are occurring in the Village of Airmont and flowing into the Saddle River.

Enclosed please find evidence of prior illegal discharges without permit which are continuing unabated, and which are destined to increase if additional new development in the Village of Airmont is allowed to be connected to the Rockland County Sewer District No. 1. At a minimum, such additional new connections cannot be allowed to occur until all necessary curative measures have been accomplished to prevent such unpermitted and illegal discharges. We are authorized to file suit in the Southern District of New York federal court at the end of the statutorily required notice period.

Please feel free to have your attorney contact me regarding any questions in this regard.

Very truly yours

RICHARD B. GOLDEN

Cc:    NYSDEC Region 3
       21 South Putt Corners
       New Paltz, New York 12561 (w/ enc.)

       NYSDEC Region 3
       200 White Plains Rd, 5th Floor

3

Tarrytown, New York 10591 (w/ enc.)

Hon. Kenneth A. Gabbert, Mayor
Borough of Upper Saddle River
376 West Saddle River Rd.
Upper Saddle River, New Jersey 07458

Robert T. Regan, Esq.
P.O. Box 214
345 Kinderkamack Rd.
Westwood, New Jersey 07675

4



New York State Department of
# Environmental Conservation

**Services Programs Subject Index Search Contact Us Home**

# Spill Incidents Database Search

**More information:**

*Environmental Remediation Databases*
*Glossary of Spills Database Terms*

**More searches:**
*New Spill Incidents Search*

*Back to Search Results*

*Other Links of Interest...*

---

## Spill Record

## Administrative Information

>     **DEC Region:** 3
>     **Spill Number:** 0606130

## Spill Date/Time

>     **Spill Date:** 08/28/2006   **Spill Time:** 12:00 PM
>     **Call Received Date:** 08/28/2006   **Call Received Time:**
>     03:00 PM

## Location

>     **Spill Name:** WOODED AREA
>     **Address:** 64 CHERRY LANE
>     **City:** AIRMONT   **County:** Rockland

## Spill Description

>     **Material Spilled:**                    **Amount Spilled:**
>     RAW SEWAGE                               Gal.

>     **Cause:** Vandalism

**Source:** Institutional, Educational, Gov., Other
**Resource Affected:** Surface Water
**Waterbody:** CREEK

## Record Close

**Date Spill Closed:** Not closed

If you have questions about this reported incident, please contact the Regional Office where the incident occurred.

---

### Other Links of Interest

Information about the Spill Response and Remediation Program
Phone Numbers for Spill Response and Remediation



New York State Department of
**Environmental Conservation**

Services| Programs |Subject Index| Search| Contact Us| Home |

# Spill Incidents Database Search

**More information:**

*Environmental Remediation Databases*
*Glossary of Spills Database Terms*
**More searches:**
*New Spill Incidents Search*

*Back to Search Results*

*Other Links of Interest...*

## Spill Record

## Administrative Information

**DEC Region:** 3
**Spill Number:** 0606130

## Spill Date/Time

**Spill Date:** 08/28/2006    **Spill Time:** 12:00 PM
**Call Received Date:** 08/28/2006    **Call Received Time:**
03:00 PM

## Location

**Spill Name:** WOODED AREA
**Address:** 64 CHERRY LANE
**City:** AIRMONT    **County:** Rockland

## Spill Description

**Material Spilled:**
RAW SEWAGE

**Amount Spilled:**
Gal.

**Cause:** Vandalism

**Source:** Institutional, Educational, Gov., Other
**Resource Affected:** Surface Water
**Waterbody:** CREEK

## Record Close

**Date Spill Closed:** Not closed

If you have questions about this reported incident, please contact
the Regional Office where the incident occurred.

## Other Links of Interest

Information about the Spill Response and Remediation Program
Phone Numbers for Spill Response and Remediation

**New York State DEC Spill File, List of actions & Resident Records**
**Rockland County Sewer District No. 1**

DEC Spill Incident Database 6/1 to 8/15/2006

| Spill No. | Spill Date | File Detail Memo | Description of event | Principal Reason | Est. Spill Gallons | Receiving Watercourse |
|---|---|---|---|---|---|---|
| 602398 | 6/2/2006 | | MH 22 Adams Drive Stony Point | ? | ? | Sewer - ? |
| 602718 | 6/10/2006 | | Washington Ave & Jackson Ave New Square | Equipment Failure | 4000 | |
| 602760 | 6/11/2006 | | Shoulder of Road Route 306 Spring Valley | Human error | 500 | Soil |
| 603418 | 6/28/2006 | | Nyack Pump Station Spear Street | Other | ? | Soil |
| 604449 | 7/19/2006 | | Sewer MH Suffern Lane, Haverstraw | Equipment Failure | 800 | Sewer - ? |
| 604511 | 7/21/2006 | | Sewer MH Suffron Lane/Madison Ave, Haverstraw | Other | 200 | Minisceongo |
| 604681 | 7/25/2006 | | Washington Ave & Jackson Ave Ramapo | Other | 1000 | |
| 605304 | 8/5/2006 | | Easement South Pascack Rd, Ramapo | Other | 500 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |



http://www.dec.state.ny.us/cfmx/extapps/derfoil/spills/results.cfm

| | Spill number | Date spill reported | Spill name | County | City/town | Address |
|---|---|---|---|---|---|---|
| 1. | 0605804 | 08/14/2006 | BARBA RESIDENCE | Rockland | PALASADES | 35 HIGHLAND AVE |
| 2. | 0605664 | 08/15/2006 | JOE NERETICH TIRE CORP. | Rockland | SPRING VALLEY | 53 UNION RD. |
| 3. | 0605665 | 08/15/2006 | STONY BROOK RIVER | Rockland | SLOATSBURG | SEVEN LAKES DR./WASH. AVE |
| 4. | 0605683 | 08/16/2006 | ORANGE & ROCKLAND CENTER | Rockland | SPRING VALLEY | 390 WEST ROUTE 59 |
| 5. | 0605705 | 08/16/2006 | GETTY 174 | Rockland | STONEY POINT | 44 LIBERTY DRIVE SOUTH |
| 6. | 0605705 | 08/16/2006 | GETTY 101 | Rockland | VALLEY COTTAGE | 221 ROUTE 303 |
| 7. | 0605707 | 08/16/2006 | GETTY 322 | Rockland | VALLEY COTTAGE | 34 ROUTE 303 |
| 8. | 0605782 | 08/18/2006 | ERICH RESIDENCE | Rockland | NYACK | 21 HAVEN COURT |
| 9. | 0605785 | 08/18/2006 | OFF THE ROADWAY | Rockland | SUFFREN | 25 OLD MILL ROAD |
| 10. | 0605834 | 08/21/2006 | ROADWAY | Rockland | ORANGEBURGH | MOUNTAIN AVE/WESTERN |

http://www.dec.state.ny.us/cfmx/extapps/derfoil/spills/results.cfm

15 results found

 

| | Spill number | Date spill reported | Spill name | County | City/town | Address |
|---|---|---|---|---|---|---|
| 11. | 0605864 | 08/21/2006 | NEXT TO RIVER | Rockland | STONY POINT | RIVER ROAD AND 5TH AVE |
| 12. | 0605895 | 08/22/2006 | EXXON MOBILE | Rockland | NANUET | 275 RT 59 EAST |
| 13. | 0606004 | 08/24/2006 | ROCKLAND CTY WASTE | Rockland | HILLBURN | 50 BALER BLVD |
| 14. | 0606012 | 08/24/2006 | MIRANT | Rockland | TOMPKINS COVE | 37 ELM STREET |
| 15. | 0606036 | 08/25/2006 | ON ROADWAY | Rockland | NYACK | 6TH AVE/NORTH BROADWAY |

 

James V. Marks (JM 6257)
Roseann Bassler Dal Pra (RBD 4919)
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007
212-513-3200

Attorneys for Defendant
Rockland County Sewer District #1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BOROUGH OF UPPER SADDLE RIVER,

            Plaintiff,

     v.

VILLAGE OF AIRMONT, ROCKLAND,
COUNTY SEWER DISTRICT #1,

            Defendants.

---

07 Civ. 0109 (\_\_\_) (MDF)

## ANSWER TO COMPLAINT OF DEFENDANT
## ROCKLAND COUNTY SEWER DISTRICT #1

      Defendant Rockland County Sewer District #1 (the "District"), by and through its attorneys Holland & Knight, LLP, as and for its Answer and Defenses to the Complaint, states as follows and, unless specifically answered otherwise, denies each and every allegation of the Complaint:

      1.    The allegations in paragraph 1 of the Complaint consist solely of a description of the case to which no response is required. To the extent a response is required, the District denies the allegations in paragraph 1.

2. The allegations in paragraph 2 of the Complaint consist solely of a description of the relief sought by Plaintiff to which no response is required. To the extent a response is required, the District denies the allegations in paragraph 2.

3. The allegations in paragraph 3 of the Complaint consist largely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 3 as they relate to it.

4. Admits that the District received notice of a potential citizen suit, but, except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the other allegations in this paragraph, and therefore denies same.

5. Admits that 60 days have passed since October 6, 2006, but, except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the other allegations in this paragraph, and therefore denies same.

6. Admits that, to its knowledge, EPA and DEC have not commenced any court action, but, except as so specifically admitted, denies each and every allegation contained in paragraph 6 of the Complaint.

7. The allegations in paragraph 7 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 7.

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint, and therefore denies same.

9. The allegations in paragraph 9 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 9.

2

10.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint, and therefore denies same. To the extent that some of the allegations present conclusions of law, no response is required. To the extent a response is required to these allegations, the District denies them.

11.    Admits that it is a county improvement district organized and existing pursuant to Article 5-A of the New York County Law, and that it is responsible for properly operating and maintaining some interceptors and pumping stations in the system and some sewers within its boundaries, but, except as so specifically admitted, denies each and every allegation contained in paragraph 11 of the Complaint. The allegation that the District is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5) is a conclusion of law to which no response is required. To the extent a response is required, the District denies this allegation.

12.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, and therefore denies same. However, to the extent that the allegations of fact characterize Plaintiff's actions, theories of injury, and present conclusions of law, no response is required.

13.    The allegations in paragraph 13 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 13 as they relate to the District.

14.    The allegations in paragraph 14 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 14.

3

15.    The allegations in paragraph 15 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 15.

16.    The allegations in paragraph 16 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 16.

17.    The allegations in paragraph 17 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 17.

18.    The allegations in paragraph 18 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 18.

19.    The allegations in paragraph 19 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 19.

20.    The allegations in paragraph 20 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 20.

### FIRST CLAIM FOR RELIEF: VIOLATIONS OF THE CLEAN WATER ACT BY SPECIFIC ILLEGAL DISCHARGES TO WATERS OF THE UNITED STATES

21.     The allegations in paragraph 21 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 21 as they relate to the District.

22.     Admits that New York Department of Environmental Conservation administers the State Pollution Discharge Elimination System ("SPDES") permit program, and has issued a SPDES permit to the District under the authority of Section 402 of the CWA, 33 U.S.C. § 1342, but, except as so specifically admitted, denies each and every allegations contained in paragraph 22 of the Complaint.

23.     The allegations in paragraph 23 of the Complaint consist solely of legal conclusions to which no response is required. To the extent a response is required, the District denies the allegations of paragraph 23 as they relate to the District.

24.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and, therefore, denies same.

25.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and, therefore, denies same.

26.     Admits that there was a sewer discharge on August 27-28, 2006, at the Cherry Lane location due to vandalism, a sewer discharge on November 6, 2006, at the Twin Lakes Pump Station on Twin Lakes Road, and a sewer discharge on November 8, 2006, at the interceptor at 4 South Monsey Road—but, except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies same. However, to the extent that the allegations of fact

5

characterize Plaintiff's actions, theories of injury, and present conclusions of law, no response is required.

27.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies same.  However, to the extent that the allegations of fact characterize Plaintiff's actions, theories of injury, and present conclusions of law, no response is required.

28.   The District is aware of one incident at the Cherry Lane location that resulted from vandalism.  The District denies that pollutants are continuing to discharge from manholes at or adjacent to Cherry Lane and South Monsey Road.  The District lacks knowledge of or information sufficient to from a belief as to the discharges for other areas within the Village of Airmont.  The District admits that there have been very sporadic discharges in the past from manholes in other areas within the District but denies that all such discharges have been into navigable waters.

29.   No unpermitted discharges were alleged in Paragraph 22, so the District denies same.  No unpermitted discharges were alleged in Paragraph 23 —and that Paragraph has no subsections (a)-(k)—so the District denies same.

30.   The allegations in paragraph 30 of the Complaint consist solely of legal conclusions to which no response is required.  To the extent a response is required, the District denies the allegations of paragraph 30 as they relate to the District.

31.   The allegations in paragraph 31 of the Complaint consist solely of legal conclusions to which no response is required.  To the extent a response is required, the District denies the allegations of paragraph 31.

6

## CONTINUING VIOLATIONS

32.   The District denies that all of its past reported spills are continuing or are reasonably likely to continue.

## RELIEF REQUESTED

Paragraphs A-E characterize Plaintiff's prayer for relief, to which no response is required.

## AS AND FOR A FIRST DEFENSE

The Court lacks subject-matter jurisdiction over Plaintiff's claims.

## AS AND FOR A SECOND DEFENSE

Plaintiff's Complaint does not provide sufficient evidence that Plaintiff has standing and capacity to sue.

## AS AND FOR A THIRD DEFENSE

Plaintiff has failed to state a claim for which relief can be granted.

## ADDITIONAL DEFENSES

The District respectfully requests leave to assert additional defenses which it deems necessary to its defense of the Complaint during or upon conclusion of its investigation and discovery of Plaintiff's claims.

7

WHEREFORE, the District demands judgment dismissing the Complaint with prejudice and with costs and such other and further relief as is deemed just and proper.

DATED:    New York, NY
          February 5, 2007

Respectfully submitted,

HOLLAND & KNIGHT LLP

BY: _____
      James V. Marks (JM 6257)
      Roseann Bassler Dal Pra (RBD 4919)
      195 Broadway, 24th Floor
      New York, NY 10007
      212-513-3200

      Lawrence R. Liebesman (D.C. Bar # 193086)
      Steven Kelton (Colo. Bar # 37186)
      2099 Pennsylvania Avenue, N.W.
      Suite 100
      Washington, DC 20006
      (202) 955-3000 D.C.

Attorneys for Defendant
Rockland County Sewer District #1

# 4329476_v3

8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
BOROUGH OF UPPER SADDLE RIVER,
KAREN MILLER, ROY OSTROM, MARIA FLORIO,
MARK RUFFOLO AND LINDA MCDONALD,

                            Plaintiffs,

v.

VILLAGE OF AIRMONT, ROCKLAND COUNTY
SEWER DISTRICT #1.
                          Defendants.
------------------------------------------------------------x

**AMENDED
COMPLAINT
JURY DEMAND**

CIV. NO. 07 CIV. 0109

(WP-4)(MDF)

The plaintiffs Borough of Upper Saddle River, Karen Miller, Roy Ostrom, Maria Florio, Mark Ruffolo, and Linda McDonald by their attorneys Burke, Miele & Golden, LLP, allege for their amended complaint herein as follows:

**STATEMENT OF THE CASE**

1.  This action is a citizens suit brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (hereinafter "Clean Water Act") and the New York  state common law claims, seeking relief from Defendants' violations of the Clean Water Act and related state common law provisions.

2.  The plaintiffs seek injunctive relief, declaratory relief, civil penalties, attorneys' fees, compensatory damages, punitive damages, and costs.

## JURISDICTION

3.   This Court has subject matter jurisdiction over the claims set forth in this complaint pursuant to 33 U.S.C. § 1365 (a)(1) and federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. §1367.

4.   On October 6, 2006, the plaintiff Borough of Upper Saddle River ("USR") gave notice of the violations and of its intent to file suit against the defendants to the Administrator of the United States Environmental Protection Agency ("EPA"), to the Commissioner of the New York State Department of Environmental Conservation ("DEC"), and to the defendants, pursuant to 33 U.S.C. § 1365 (b)(1)(A) of the Clean Water Act. (attached hereto)

5.   More than 60 days have passed since the above-referenced notice was served upon defendants and the governmental parties named above, thus satisfying section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. 1365 (b)(1)(A).

6.   Neither the EPA nor the DEC has commenced and diligently prosecuted a court action to redress the violations under section 505(b)(1)(B) of the Clean Water Act, 33 U.S.C. § 1365 (b)(1)(B).

## VENUE

7.   Venue is appropriate in the Southern District of New York pursuant to Section 505 (c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1) because the source of the violations is located within this District.

## PARTIES & GENERAL ALLEGATIONS

8.  The Borough of Upper Saddle River, whose border abuts the Village of Airmont, is a municipality under the laws of the State of New Jersey.

9.  The plaintiff USR is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a).

10. USR owns park land known as "Lyons Park" which its residents use for recreation which abuts the Saddle River. As a result of the recent sewage spills in the Village of Airmont (some but not all of which are listed below) some of the residents have not recreated or permitted their families to recreate in the park particularly in the areas closest to the river.

11. Karen Miller is a resident of USR and is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a) who resides near USR's border with the Village of Airmont and her family reside in the immediate vicinity of the Saddle River. Ms. Miller and her young children and other members of her family have used the Saddle River for recreational purposes. As a result of the recent frequent sewage spills occurring in the Village of Airmont and flowing into the Saddle River the water of the Saddle River (some but not all of which are listed below) has lost clarity, has become murky and smells of sewage. Ms. Miller and her family find these conditions unpleasant and esthetically offensive. These conditions have had an impact on the frequency and manner in which Ms. Miller and her family use and enjoy the Saddle River. During the month of March 2007, Ms. Miller's minor child came in contact with the river water. The child required immediate decontamination as a result of a fear of contact to waters containing sewage. Ms. Miller and her family would use the

Saddle River much more if its water remained clear and without sewage and foul odors. The most recent sewage spills in the Village of Airmont have prevented Ms. Miller and her family from using and enjoying the Saddle River.

12. Roy Ostrom is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a). He is a resident of USR whose property abuts the Saddle River and it is also located near the boarder of the Village of Airmont and USR. Mr. Ostrom has used and enjoyed the Saddle River in the past for fishing, river walks and backyard gatherings that include dining particularly in the warm months of the spring, summer and fall. As a result of the recent and frequent sewage spills occurring in the Village of Airmont and flowing into the Saddle River (some but not all of which are included below) the water of the Saddle River has lost its clarity, has become murky and smells of sewage. As a result of the listed spills among others Mr. Ostrom no longer fishes in the Saddle River. As a result of the listed spills and others not listed the river and surrounding area's odor is so foul of sewage that Mr. Ostrom does not use his backyard as he desires. He has made alternate plans in the summer because of the Village of Airmont spills and foul smells and has contemplated selling his home.

13. Maria Florio and her husband Ruffolo and their family are "citizens" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a) who reside near the border of the Village of Airmont and USR and in the immediate vicinity of the Saddle River. Ms. Florio and her husband Ruffolo have a young son with whom they would walk along the river to his school and to the Town library. They have used the Saddle River for recreational purposes. As a result of the

recent and frequent sewage spills (some but not all of which are listed below) occurring in the Village of Airmont and flowing into the Saddle River the water of the Saddle River has lost its clarity, has become murky and smells of sewage. Ms. Florio and Ruffolo and their family find these conditions unpleasant and esthetically offensive. They have impacted the frequency and manner in which their family enjoys the Saddle River.

14. Linda McDonald is a "citizen" within the meaning of the citizen suit provisions of section 505(a) of the Clean Water Act, 33 U.S.C. § 1365 (a) and is a resident of USR whose property abuts the Saddle River and is located near the boarder of the Village of Airmont and USR. Ms. McDonald has used and enjoyed the Saddle River in the past for fishing, river walks and other recreational activities. As a result of the recent and frequent sewage spills (some but not all of which are listed below) occurring in the Village of Airmont and flowing into the Saddle River the water of the Saddle River has lost its clarity, has become murky and smells of sewage. Ms. McDonald and her family find these conditions unpleasant, esthetically offensive and have impacted the frequency and manner in which she and her family enjoy the Saddle River.

15. Defendant Village of Airmont is a political subdivision of the State of New York, duly incorporated under the laws of the State of New York, and is a "municipality" within the meaning of Section 502(4) of the Act, 33 U.S.C. § 1362(4), and a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5). Defendant Village of Airmont is a municipal corporation organized for the purpose of exercising those duties and prerogatives of local government and the administration of public affairs which have been conferred upon them by the laws of the State of New York. Upon information and belief, the Village of Airmont by their elected or appointed officials, has

5

the authority to provide sewer services to its residents and to approve sewer use fees and connections to the District to fund the operation and maintenance of the sewer system and to ensure compliance with applicable laws and regulations. The Village's continued approval of sewer connections and failure ensure compliance aids and abets the Rockland County Sewer District's continuous violations of the CWA as indicated in the listed spills below. Defendants Village of Airmont are named as Defendants, in part, to effectuate complete relief in this action.

16. Defendant Rockland County Sewer District No. 1 ("RCSD #1") is a county agency responsible for properly operating and maintaining interceptors and pumping stations owned by the RCSD in the system and all sewers within its boundaries, and is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

17. The quality of the Saddle River which flows through the Village of Airmont and the Borough of Upper Saddle River and its surrounding areas directly affects the health, recreational, aesthetic, commercial, and environmental interests of USR's residents. The interests of USR's residents are being, and will be, adversely affected by Defendants' failure to comply with the requirements of the Clean Water Act.

18. Defendants are "persons" within the meaning of the citizen suit provisions of the Section 505 (a)(1) of the Clean Water Act, 33 U.S.C. § 1365 (a)(1).

19. Congress enacted the Clean Water Act in 1972 for the purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251. One of the specific goals of the Act was "that the discharge of pollutants into the navigable waters be eliminated by 1985." Id.

20. The Clean Water Act prohibits the discharge of pollutants from a point source to the waters of the United States, except pursuant to, and in compliance with, a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §1311(a); 33 U.S.C. §1342. The State of New York is authorized to issue State Pollutant Discharge Elimination System ("SPDES") permits in lieu of the NPEDES permits pursuant to Clean Water Act § 492. 33 U.S.C. §1342.

21. The Clean Water Act defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

22. The Clean Water Act defines "point source" as "any discernable, confined, and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

23. Pipes are point sources within the meaning of section 502 of the Clean Water Act, 33 U.S.C. § 1362(14).

24. "Waters of the United States" within the meaning of the Clean Water Act include any navigable waters or waters that are tributaries to navigable waters. 33 U.S.C. § 1362(7).

25. The Saddle River, its tributaries, and adjacent associate wetlands are waters of the United States within the meaning of the Clean Water Act.

26. As a direct consequence of defendants' conduct, the covered waterways have suffered degradation of the sort prohibited by the CWA and related state law and regulations, diminishing the utility of said waterways to plaintiffs.

27. As a direct consequence of defendants' conduct, plaintiffs' members have suffered compensable damages, arising from substantial and repeated sewage spills and overflows destruction of property and diminution in the projected values of their property.

28. Plaintiffs have no adequate remedy in law other than by and through the filing of this lawsuit.

## FIRST CLAIM FOR RELIEF: VIOLATION OF THE CLEAN WATER ACT BY SPECIFIC ILLEGAL DISCHARGES TO WATERS OF THE UNITED STATES

29. Plaintiffs reallege and incorporate by reference each and every allegation set forth above.

30. The wastewater collection and treatment system owned and operated by the Village of Airmont and RCSD #1 is a "treatment works" as that term is defined in Section 212(2)(A) and (B) of the Act, 33 U.S.C. § 1292(2)(A) and (B), and a "publicly owned treatment works" as that term is defined by 40 C.F.R. §122.2 and 40 C.F.R. 403.3(q).

31. The state Department of Environmental Conservation administers the State Pollution Discharge Elimination System permit program, which issued a SPDES Permit to Defendant RCSD #1, under the authority of Section 402 of the Act, 33 U.S.C. § 1342.

32. The Saddle River, to which pollutants have been discharged is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

33. Defendants discharge water pollution into the Saddle River, and its tributaries in the form of raw sewage, which includes but is not limited to, biological material and other organic matter exerting chemical and biological oxygen demand in the waters, fecal coliform bacteria; nutrients, including nitrogen and phosphorous; settleable, suspended and dissolved solids, including toilet paper and sewerage solids; salts; metals solid waste; pathogens; disinfectants (such as permanganate); and feminine products.

34. Unpermitted discharges from the Defendants have resulted in the presence of distinctly visible floating or settleable solids in the waters, as well as, suspended solids, deposits of sludge and silt, bad odors, materials harmful to aquatic life, distinctly visible color, and other conditions that alter the integrity of such waters.

35. Unpermitted discharges of wastewater to the navigable waters, of raw sewage, have occurred on numerous occasions and include, but are not limited to:

 a. August 23, 2006

 b. August 24, 2006

 c. August 25, 2006

 d. August 26, 2006

 e. August 27, 2006

 f. August 28, 2006

 g. August 29, 2006

 h. August 30, 2006

 i. September 1, 2006

j.  September 2, 2006

k.  September 3, 2006

l.  October 31, 2006

m.  November 6, 2006

n.  November 8, 2006

o.  On or about March 2, 2007

p.  And upon information and belief additional unreported spills from at least August 23, 2006 to present

36. Organisms in untreated wastewater containing raw sewage can cause a number of diseases in users of contaminated areas. These diseases include, but are not limited to, enteric diseases such as gastroenteritis, dysentery, and cholera. All of these diseases are highly communicable.

37. The Village of Airmont and Rockland County Sewer District #1 have discharged, and upon information and belief, continue to discharge, pollutants from manhole(s) at or adjacent to Cherry Lane, South Monsey Road, and in the vicinity of the Saddle River Valley Swim Club and other areas in the Village of Airmont and Rockland County Sewer District #1 into navigable waters without the authorization of a SPDES permit.

38. The unpermitted discharges include, without limitation, the unpermitted discharges identified in Paragraph 26 and 27(a) through (p).

39. Unless enjoined by the Court, the Village of Airmont and RCSD #1 will continue to discharge pollutants to navigable waters in violation of its SPDES permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342.

40. Each day of each unpermitted discharge of pollutants is a separate violation of Section 301 of the Act, 33 U.S.C. § 1311.

## CONTINUING VIOLATIONS

41. As of the date of the filing of this complaint, all of the violations Complained of in the October 6 2006 notice letter are continuing or are reasonably likely to continue.

## SECOND CLAIM FOR RELIEF

42. Plaintiffs Roy Ostrom reallege and incorporate by reference each and every allegation set forth above.

43. Defendants, by causing or allowing the discharge, or contributing to the discharge of sewage from the manholes and sewer pipes in the Village of Airmont -- Cherry Lane, South Monsey Road and Saddle River Swim Club into and upon the waters and subsurface and surface lands in the area of the Saddle River, which are used by or for the benefit of plaintiff, created and maintained a private nuisance through the injury to and the unreasonable and significant interference with the plaintiff's use and enjoyment of such dwelling and property.

44. As a proximate result of such wrongful actions and omissions by defendants, plaintiff has suffered injury to or loss real property value.

45. The defendants' activities pose a continuing threat to the plaintiff use and enjoyment of his property interests.

## THIRD CLAIM FOR RELIEF

46. Plaintiff USR reallege and incorporate by reference each and every allegation set forth above.

47. Defendants, by causing or allowing the discharge, or contributing to the discharge of sewage from Cherry Lane manholes, South Monsey Road and the manholes and pipes in the vicinity of the Saddle River Swim Club into and upon the waters and subsurface and surface lands of the Saddle River, which are used by or for the benefit of plaintiffs and the residents of USR, unreasonably and significantly interfered and will continue to interfere with the rights of plaintiffs classes to waters, lands, and an environment that are free from pollution and contamination.

48. Defendants' unreasonable and significant interference with the rights of plaintiff and rights common to the general public, created a public nuisance under applicable New York state common law principles and caused plaintiff to suffer special and distinct harm to their health Safety and/or comfort, different from that suffered by other members of the public.

49. The harm suffered by plaintiff USR as a direct and proximate result of the wrongful acts and omissions of the defendants includes but is not limited to not limited to fishing and recreating, and long-lasting or permanent injury to the Saddle River.

50. Defendants owed a duty to plaintiff and the residents of USR to refrain from conduct in processing of sewage which reasonably and foreseeably could have been anticipated to cause such injuries.

## FOURTH CLAIM FOR RELIEF

51. Plaintiffs USR, Roy Ostram, and Linda McDonald reallege and incorporate by reference each and every allegation set forth above.

52. Defendants' conduct as described above constituted a trespass in that as a direct result of defendants' conduct, sewage was intentionally, recklessly, and negligently discharged from the treatment facilities and pipes maintained by the RCSD #1 into and upon the waters and subsurface and surface lands in the area of the Saddle River owned or by plaintiffs, or in which they have other property rights.

53. As a proximate result of defendants' trespass, the property rights of plaintiffs and members of the plaintiff classes have been injured and continue to be injured, including but not limited to injury to marine and wildlife resources. This injury is irreparable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court grant the following relief:

    A. A judgment declaring that the Defendants have violated the Clean Water Act.

    B. A permanent injunction directing Defendants to take all steps necessary to come into permanent, consistent compliance with the Clean Water Act, the regulations promulgated thereunder, and its SPDES permit

    C. Award civil penalties against Defendants

D.  Award Plaintiff their costs, including reasonable attorney, witness and

consultant fees, as authorized by Section 505(d) of the Clean Water Act,

33 U.S.C. § 1365 (d);

E.  Award compensatory and punitive damages and for harm to property;

F.  Award compensatory damages for economic losses;

G.  Award damages for interference with use and enjoyment of property

interests and natural resources;

H.  Award damages for the disruption and distress caused by the spills;.and

I.  Award other such relief as this Court deems appropriate.


Dated: April 10, 2007



Respectfully submitted,

Michael K. Burke (MKB 7554)
Burke, Miele & Golden, LLP
100 Washington Street, P.O. Box 397
Suffern, New York 10901
(845) 357-7500

14

*Fox, M. J.*

# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. January 2006

------------------------------------------------x

BOROUGH OF UPPER SADDLE RIVER,

Plaintiff(s),

U.S. DISTRICT COURT
FILED
APR 2 6 2007
S.D. N.Y.

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

- against -

VILLAGE OF AIRMONT, ROCKLAND
COUNTY SEWER DISTRICT #1,

~~Civxxx(xxx)x(xxx)~~
07 CIV 0109 (WP4) (MDF)

Defendant(s).

------------------------------------------------x

**This Court requires that this case shall be <u>ready for trial</u> on or after**

The following Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel for the parties, pursuant to Rules 26(f) and 16 of the Federal Rules of Civil Procedure.

The case (is) ~~(is not)~~ to be tried to a jury.

Joinder of additional parties must be accomplished by ___5/22/07___.

Amended pleadings may be filed until ___4/10/07___.

**Discovery:**

1. Interrogatories are to be served by all counsel no later than ___6/6/07___, and responses to such interrogatories shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 (shall) (shall not) apply to this case.

2. First request for production of documents, if any, to be served no later than___6/6/07___.

3. Depositions to be completed by ___11/30/07___.

    a.    Unless counsel agree otherwise or the Court so orders, depositions are not to be held until all parties have responded to any first requests for production of documents.

    b.    Depositions shall proceed concurrently.

    c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

    d.    If the defense of qualified immunity from suit as a matter of law has been or will be asserted by any defendant(s) with respect to any claim(s) in the case, counsel for any such defendant(s) shall, within thirty (30) days of this order depose plaintiff(s) at least concerning all facts relevant to the issue of qualified immunity. Within thirty (30) days thereafter defendant(s) shall serve consistent with Local Rule 6.1 and file a motion under Rule 12(c) or Rule 56, returnable on a date posted in

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

the New York Law Journal by Judge Brieant for hearing motions. The motion shall, in the absence of agreement of counsel, be limited to the issue of qualified immunity, and plaintiff(s) version of the events shall be assumed true for purposes of the motion. **Failure to comply with this provision of this Order shall operate as a waiver of the opportunity to resolve the issue of qualified immunity by motion prior to trial.**

4.    Any further interrogatories, including expert interrogatories, to be served no later than _____11/1/07_____.

5.    Requests to Admit, if any to be served no later than _____11/15/07_____

6.    Additional provisions relating to discovery agreed upon by counsel for the parties (are) (are not) attached and made a part hereof.

7.    All discovery is to be complete by _____12/15/07_____

Dispositive motions, if any, must be served on notice as required by Local Civil Rule 6.1, and must be returnable before the Court on a published motion day, no later than three weeks before the ready for trial date.

Next Case Management Conference _____5/15/07_____
(This date will be set by the Court at the first conference)

Joint Pretrial Order is required only if counsel for all parties agree that it is desirable, or the Court so orders.

This case has been designated to the Hon. Mark D. Fox _____, United States Magistrate Judge at White Plains for discovery disputes if the Court is "unavailable" and for trial under 28 U.S.C. § 636(c) if counsel execute their consent in writing.

Strict compliance with the trial readiness date will be required. This Plan and Order may not be changed without leave of the Court or the assigned Magistrate Judge acting under a specific reference order.

Upon signing a Consent for Trial Before a United States Magistrate Judge, the Magistrate Judge will establish an agreed date certain for trial and will amend this Plan and Order to provide for trial readiness consistent with that agreed date.

SO ORDERED.

Dated: White Plains, New York

4/26/07

Hon. Mark D. Fox
United States Magistrate Judge