UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
BOROUGH OF UPPER SADDLE RIVER,        :
KAREN MILLER, ROY OSTROM, MARIA       :
FLORIO, MARK RUFFOLO, and LINDA       :
MCDONALD,                             :
:
             Plaintiffs,        :
:
  -against-                          :        REPORT &
:        RECOMMENDATION
:        07 Civ. 0109 (KMK)(MDF)
:
VILLAGE OF AIRMONT, ROCKLAND          :
COUNTY SEWER DISTRICT #1,             :
:
             Defendants.        :
:
------------------------------------------------------------X

TO:   THE HONORABLE KENNETH M. KARAS, U.S.D.J.

     Borough of Upper Saddle River and individual plaintiffs, Karen Miller, Roy Ostrom, Maria Florio, Mark Ruffolo, and Linda McDonald bring this lawsuit against defendants, Village of Airmont and Rockland County Sewer District #1, alleging violations of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251 *et seq.*, as well as a number of state law tort claims.  Currently pending before the Court are (1) the Rockland County Sewer District's motion to dismiss the claims of Upper Saddle River pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing; (2) the Rockland County Sewer District's motion to dismiss the claims of the individual plaintiffs pursuant to Fed. R. Civ. P. 12(b)(1) for failure to provide the required notice of their intent to sue; and (3) the Village of Airmont's motion to dismiss and for summary judgment with respect to all claims asserted against it pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b).  For the reasons that follow, I respectfully recommend that your Honor deny

the District's motions, but grant the Village's motion.

## BACKGROUND

Borough of Upper Saddle River ("USR") is a New Jersey municipality with a border abutting the Village of Airmont ("Village"). Am. Compl. ¶ 8. USR owns park land known as "Lyons Park" along the Saddle River and alleges that as a result of recent sewage spills in the Village, some USR residents have not recreated in Lyons Park, especially in the areas closest to the river. *Id.* ¶ 10. Karen Miller, Roy Ostrom, Maria Florio, Mark Ruffolo, and Linda McDonald (collectively, "Individual Plaintiffs"), are all residents of USR[1] who reside next to or near the Saddle River, and who have found their use and enjoyment of the river curtailed by the recent, frequent sewage spills occurring in the Village and flowing into the Saddle River. *Id.* ¶¶ 11-14. They allege that, as a result of the sewage spills, the Saddle River "has lost its clarity, has become murky, and smells of sewage." *Id.*

Plaintiffs allege, upon information and belief, that the Village, "has the authority to provide sewer services to its residents and to approve sewer use fees and connections to the District to fund the operation and maintenance of the sewer system and to ensure compliance with applicable laws and regulations." *Id.* ¶ 15. They allege that the Village is aiding and abetting the Clean Water Act violations committed by co-defendant, Rockland County Sewer District #1 ("District") by continuing to approve sewer connections and failing to ensure compliance. *Id.* The District is "a county agency responsible for properly operating and maintaining interceptors and pumping stations owned by the [District] in the system and all

---

[1] It is assumed that Maria Florio and Mark Ruffolo are residents of USR, although this is not stated in the Amended Complaint. *See* Am. Compl. ¶ 13.

sewers within its boundaries . . . ." *Id.* ¶ 16.  Plaintiffs allege that Defendants have engaged in unpermitted discharges of pollutants, in the form of raw sewage, into the Saddle River, in violation of Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and that such violations are continuing or reasonably likely to continue.  *Id.* ¶¶ 33-41.

Plaintiff Roy Ostrom, whose dwelling and property abut the Saddle River, asserts a separate state law claim for private nuisance.  Ostrom alleges that he has suffered injury to his use and enjoyment of his dwelling and property, as well as injury to, or loss of, real property value as a result of Defendants' activities of "causing or allowing the discharge, or contributing to the discharge of sewage from the manholes and sewer pipes in the Village of Airmont – Cherry Lane, South Monsey Road and Saddle River Swim Club into and upon the waters and subsurface and surface lands in the area of the Saddle River."  *Id.* ¶¶ 12, 42-45.

Plaintiff USR asserts another separate state law claim for public nuisance, alleging, among other things, that Defendants' conduct in the processing of sewage has caused long-lasting or permanent injury to the Saddle River.  *Id.* ¶¶ 46-50.

The fourth and final claim, asserted by plaintiffs USR, Ostrom, and Linda McDonald, who also owns property abutting the Saddle River, *id.* ¶ 14, is a state law claim for trespass.  They allege that Defendants' conduct in "intentionally, recklesssly, and negligently" discharging sewage has caused irreparable injury, "including but not limited to injury to marine and wildlife resources."  *Id.* ¶¶ 51-53.

Plaintiffs are seeking Defendants' compliance with the mandates of the Clean Water Act, as well as the recovery of monetary damages, costs, and fees.  In response to the Amended Complaint, Defendants have filed their motions to dismiss.

**DISCUSSION**

**I. The District's Motion to Dismiss USR's Claims**

    A. **Standard of Review**

The District is moving to dismiss USR's claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing to bring suit under the Clean Water Act. "[Standing] is the threshold question in every federal case, determining the power of the court to entertain the suit. . . . The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (citations and footnotes omitted). On a motion to dismiss for lack of standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 501 (citation omitted).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 561 (citation omitted).

### B. Elements of Standing

#### 1. Injury in Fact

The District argues that USR has failed to allege the required "injury in fact" sufficient to confer standing. To establish an "injury in fact," "a plaintiff must allege a personal stake in the outcome of the case and a 'distinct and palpable' injury by way of 'specific, concrete facts.'" *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 358 (S.D.N.Y. 2000) (quoting *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72 (1978)).

In *City of Reynoldsburg v. Browner*, 834 F. Supp. 963 (S.D. Ohio 1993), cited by USR, where a municipality brought suit under the Clean Water Act, the court explained the standard for "injury in fact":

> The Supreme Court has determined that cognizable injury can implicate environmental, aesthetic or recreational as well as economic interests. In order to be considered among the injured, the City must show a connection with the geographical area that is the subject of the suit. The complaint must properly allege that the plaintiff resides in the vicinity of, or owns property near the body of water affected by the defendants' actions. The complaint must also allege that the health, economic, recreational, aesthetic or environmental interests of the plaintiff are being and will be adversely affected by these actions.

*Id.* at 970 (citations omitted).

In its Amended Complaint, USR alleges that it owns park land next to the Saddle River

5

and that the recreational use of such park land has been negatively impacted by the alleged discharge of pollutants into the river. Am. Compl. ¶ 10. In addition, such "[u]npermitted discharges from the Defendants have resulted in the presence of distinctly visible floating or settleable solids in the waters, as well as, suspended solids, deposits of sludge and silt, bad odors, materials harmful to aquatic life, distinctly visible color, and other conditions that alter the integrity of such waters." *Id.* ¶ 34. USR also alleges that "[o]rganisms in untreated wastewater containing raw sewage can cause a number of diseases in users of contaminated areas." *Id.* ¶ 36. Thus, USR alleges a connection with the geographical area in question. And it also alleges harm to its health, recreational, aesthetic and environmental interests in the form of possible adverse health consequences, diminished recreational value of its park land, and damage to its aesthetic and environmental interests since pollutants can be seen floating in the waters, are causing bad odors, and are harmful to aquatic life.

However, relying upon the case of *City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004), the District argues that USR lacks standing since it has failed to articulate a direct proprietary or governmental interest, apart from the interests of its residents, upon which to base its claims. In *City of Sausalito*, the City had sued to enjoin the National Park Service from proceeding with the development and rehabilitation of Fort Baker, a former military base nearby. In discussing the issue of standing, the court stated that "[a]s a municipality, Sausalito may not simply assert the particularized injuries to the 'concrete interests' of its citizens on their behalf." 386 F.3d at 1197 (citation omitted). Rather, a municipality "may sue to protect its own 'proprietary interests' that might be 'congruent' with those of its citizens." *Id.* (citation omitted). "The 'proprietary interests' that a municipality may sue to protect are as varied as a

municipality's responsibilities, powers, and assets." *Id.* Among the proprietary interests of a municipality enumerated by the court were its ability to enforce land-use and health regulations, its powers of revenue collection and taxation, protection of its natural resources from harm, and its interest in land management practices of federal land which could impact adjacent municipally-owned land. *Id.* at 1198 (citations omitted).

On defendants' motion for summary judgment, the court held that the City of Sausalito had claimed injury sufficient to confer Article III standing where it had submitted a declaration asserting various management, public safety, economic, aesthetic, and natural resource harms, including "an increase in 'noise and trash,' 'impaired air quality,' and harm to its 'marina, parks, trails, and shoreline.'" *Id.* at 1199. Thus, the court concluded that "Sausalito has alleged harm to its proprietary interests with sufficient detail to state a 'concrete and particularized' injury." *Id.* (citation omitted).

Since in this case, unlike *City of Sausalito v. O'Neill*, USR's standing is being challenged on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. USR alleges, like Sausalito, harm to its park land, although in this case due to proximity to polluted waters, including visible floating pollutants, foul odors, possible health risks, and decreased use and enjoyment. At this early stage of the litigation, such allegations suffice to show harm to USR's proprietary interests.

Moreover, allegations of injury to a municipality's real property can confer standing. *See City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353, 359 (S.D.N.Y. 2000); *cf. City of Sausalito*, 386 F.3d at 1197 ("[A] municipality's cognizable interests are not confined to protection of its real and personal property."). It makes no sense for the District to concede that

7

the Individual Plaintiffs, some of whom own property abutting the Saddle River, have standing when they assert injury to their property interests, but deny that USR has standing to assert injury to its property interests (likewise with respect to health, recreational, aesthetic, or environmental interests). The Clean Water Act in no way confines its citizen suit provisions to private citizens. *See* 33 U.S.C. §§ 1365 (g) ("'[C]itizen' means a person or persons having an interest which is or may be adversely affected.") & 1362(5) ("The term 'person' means [a] . . . municipality . . ."); *see also City of Sausalito*, 386 F.3d at 1197 (a municipality's "'proprietary interests'. . . might be 'congruent' with those of its citizens.") (citation omitted).

   The District also argues that USR has not alleged sufficient injury since it "does not allege that USR itself actually uses the Saddle River in any way." Memorandum of Law in Support of Defendant Rockland County Sewer District #1's Motion to Dismiss all Claims Asserted Against it by Plaintiff Borough of Upper Saddle River ("District's Moving Brief") at 9. But there is simply no support for the proposition that USR must use the allegedly polluted waterway, albeit one that runs alongside its park land and has a negative impact thereon, in order to allege that it has been injured. For example, in *City of Sausalito v. O'Neill*, *supra*, the city manager's declaration said, among other things, that the development of nearby federal park land would negatively impact Sausalito by rendering its marina, parks, trails and shoreline "less attractive and ecologically healthy." 386 F.3d at 1198; *see generally Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 71 (3d Cir. 1990) (sufficient allegations of injury to aesthetic and recreational interests of users of park land located adjacent to polluted waterway). Similarly, USR is alleging that polluting activities occurring in an adjacent waterway are negatively impacting its park land.

8

In sum, USR has succeeded in alleging an "injury in fact" sufficient to confer standing.

### 2. Traceability/Causation

The District also argues that USR fails to satisfy the traceability or causation element of standing, *i.e.*, that the injury is "fairly traceable" to the challenged conduct. However, its arguments speak more to what the evidence might show, *see*, *e.g.*, District's Moving Brief at 11 ("With so many sources of contamination, it is highly questionable whether USR will be able to carry its burden *proving* causation.") (emphasis added), and, as such, are premature at this early stage of the litigation. Rather, in the context of a motion to dismiss, the court in *City of Reynoldsburg*, *supra*, stated that "the plaintiff need only allege that there is a substantial likelihood that the defendants' conduct caused its harm." 834 F. Supp. at 970 (citing *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978)).

The Amended Complaint alleges that recent sewage spills caused by Defendants' conduct have polluted the Saddle River. It alleges that these discharges of pollutants are from point sources (*e.g.*, manholes in the Village) within the District's sewer system, are occurring without the authorization of a State Pollution Discharge Elimination System ("SPDES") permit, as required by the Clean Water Act, and as such, are a violation of the Act. Am. Compl. ¶¶ 33-35, 37, 39. Through various statements in the Amended Complaint, as explained more fully above, USR alleges that this pollution is causing harm to its proprietary interests in its park land, including injuries to its health, recreational, aesthetic, and environmental interests. "An allegation of likely causation is all that is necessary to satisfy the 'fairly traceable' element of the

9

*Valley Forge* test." *Id.*[2]  Therefore, USR has satisfied the second element of the test for standing.

### 3. Redressability

The District does not address this element of standing in its motion papers. However, inasmuch as USR has successfully alleged an injury in fact that is fairly traceable to Defendants' conduct, it has likewise succeeded in alleging that "it is likely . . . that the injury will be redressed by a favorable decision." *Friends of the Earth*, 528 U.S. at 181 (citation omitted).

In its request for relief in the Amended Complaint, USR seeks, among other things, to compel Defendants to comply with the requirements of the Clean Water Act, including compliance with the SPDES permit.[3] If Defendants do so, then USR's complaint will be redressed in a favorable manner. Therefore, USR has established all three elements necessary to confer standing,[4] and I recommend that the District's motion to dismiss be denied.

---

[2]Even in the context of a motion for summary judgment, "The requirement that plaintiff's injuries be 'fairly traceable' to the defendant's conduct does not mean that plaintiffs must show to a scientific certainty that defendant's effluent, and defendant's effluent alone, caused the precise harm suffered by the plaintiffs. A plaintiff need not prove causation with absolute scientific rigor to defeat a motion for summary judgment." *Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990) (footnote omitted); *see also Mancuso v. Consol. Edison Co. of New York*, 130 F. Supp. 2d 584, 592 (S.D.N.Y. 2001) ("[T]here is no need to prove with scientific certainty that defendant's actions caused the harm suffered by plaintiff. . . . Thus, the question of whether plaintiffs have alleged an injury in fact that is fairly traceable to alleged violative conduct is one which is distinct from that of whether plaintiffs have a meritorious claim.") (citation omitted), *aff'd*, 25 F. App'x 12 (2d Cir. 2002) (unpublished opinion).

[3]The Amended Complaint only alleges the issuance of an SPDES permit to the District, Am. Compl. ¶ 31, but for purposes of deciding the District's motion, it is clear that USR has established redressability with respect to its claims against the District.

[4]Since USR has standing in its own right, it is irrelevant whether the District concedes the standing of the Individual Plaintiffs. Similarly, USR need not attempt to rely on notions of associational or *parens patriae* standing, which, in any event, would have failed. *See City of Olmsted Falls, Ohio v. Fed. Aviation Admin.*, 292 F.3d 261 (D.C. Cir. 2002) (rejecting municipality's assertion of associational standing); *City of New York v. Heckler*, 578 F. Supp. 1109, 1123 (S.D.N.Y. 1984) ("A city generally does not have *parens patriae* standing.") (citations omitted), *aff'd*, 742 F.2d 729 (2d Cir. 1984), *aff'd sub nom. Bowen v. City of New York*, 476 U.S. 467 (1986).

### C. USR's State Law Claims

Because I recommend that the District's motion be denied, I recommend that the Court retain jurisdiction over USR's state law claims and deny the District's motion to dismiss those claims as well. *See* 28 U.S.C. § 1367(a).

## II. The District's Motion to Dismiss the Individual Plaintiffs' Claims

The District separately moves to dismiss the Individual Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that they failed to provide notice as required by the Clean Water Act. *See* 33 U.S.C. § 1365(b)(1)(A) ("No action may be commenced – (1) under subsection (a)(1) of this section – (A) prior to sixty days after the plaintiff has given notice of the alleged violation (I) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . ."). The District concedes that USR complied with the notice requirement.

The Second Circuit has yet to rule on the issue of whether fulfillment of the notice requirement by one plaintiff constitutes fulfillment of the notice requirement by all plaintiffs, nor did the Supreme Court address this issue in *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), in which the petitioners as a group failed to provide the requisite notice, requiring dismissal of their lawsuit. Courts have reached differing conclusions on this issue. *Compare New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 833 (10th Cir. 1996) ("Although some district courts have adopted a pragmatic view that notice by one plaintiff acts as notice by all, *see, e.g., Environmental Defense Fund v. Tidwell*, 837 F. Supp 1344, 1352-53 (E.D.N.C. 1992), we think that approach is inconsistent with *Hallstrom*."), *with Envtl. Defense Fund v. Tidwell*, 837 F. Supp. 1344, 1352-53 (E.D.N.C. 1992) (citing district court cases

in which notice by one plaintiff was held sufficient as to all plaintiffs). However, district courts in this circuit have found that "[n]otice provided by a single plaintiff in a suit brought by multiple plaintiffs constitutes 'substantial compliance' with the notice requirements of the [Clean Water Act] . . . ." *Long Island Soundkeeper Fund, Inc. v. New York Athletic Club of the City of New York*, No. 94 Civ. 0436, 1996 WL 131863, at *3 (S.D.N.Y. Mar. 22, 1996); *see also CARS v. U.S. Army Corps of Engineers*, 04-CV-0328E, 2005 U.S. Dist. LEXIS 38404, at *19-*20 (W.D.N.Y. Dec. 23, 2005) (quoting *Long Island Soundkeeper Fund*). Therefore, since USR provided the required notice, there has been "substantial compliance" with the statute.

The fact that the Individual Plaintiffs were added to the action by way of the Amended Complaint does not alter this conclusion. The goal of the statutory notice provision is to allow "Governmental agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits," and to give "the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Hallstrom*, 493 U.S. at 29 (citations omitted). USR's notice was sent to the appropriate government agencies, as well as the District, putting them all on notice of the claims at issue in this litigation, thereby satisfying this goal. It is unclear how the failure to include the names of the Individual Plaintiffs in any way hindered fulfillment of that goal.

Moreover, virtually the same alleged violations of the Clean Water Act that formed the basis of the original Complaint, form the basis of the Amended Complaint. *See, e.g.,* Compl. ¶ 26; Am. Compl. ¶ 35. The additional allegations in the Amended Complaint, designed primarily to establish the standing of the Individual Plaintiffs and to add state law claims, do not alter the fundamental allegations concerning unlawful discharges of pollutants into the Saddle River

which formed the basis of USR's October 6, 2006 notice. The District cannot simultaneously argue that the content of USR's notice is sufficient if provided on behalf of USR, yet insufficient if provided on behalf of the Individual Plaintiffs, when the alleged violations underpinning their claims are the same. *Mancuso v. New York State Thruway Auth.*, 909 F. Supp. 133 (S.D.N.Y. 1995), *aff'd*, 86 F.3d 289 (2d Cir. 1996), cited by the District, where the issue was whether the notice given provided sufficient information concerning the alleged violations, is simply inapposite.

Therefore, I recommend that the District's motion to dismiss the Individual Plaintiffs' Clean Water Act claim be denied. I further recommend that the Court retain jurisdiction over their state law claims and deny the District's motion to dismiss those claims as well. *See* 28 U.S.C. § 1367(a).

**III. The Village's Motion to Dismiss and for Summary Judgment**

The Village moves to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6) and 56(b), on the ground that it lacks ownership, operational authority, or control over the wastewater collection and treatment system that is the subject of the Amended Complaint. In support of its motion, the Village submits the Affidavit of John C. Layne, the Village's Mayor (the "Layne Affidavit"), which states that the Village "neither owns nor operates the wastewater collection and treatment system described in plaintiff's Complaint" and that it "does not own, operate, manage, direct, or otherwise supervise Rockland County Sewer District #1." Rather, according to the Affidavit, "[t]he facility described by plaintiff in its complaint with improperly discharging in violation of its SPDES permit is owned, operated, managed, directed, supervised and controlled by Rockland County Sewer District #1." Therefore, the Village contends, it

13

cannot be held liable for any discharge of pollutants into the Saddle River.

Plaintiffs, in contrast, argue that they are not claiming that the Village owns or operates any facility described in their Amended Complaint, but rather, as alleged therein, that the Village "has the authority to provide sewer services to its residents and to approve sewer use fees and connections to the District to fund the operation and maintenance of the sewer system and to ensure compliance with applicable laws and regulations." Am. Compl. ¶ 15. Based on this authority, Plaintiffs allege that the Village is liable for violations of the Clean Water Act as an aider and abettor: "The Village's continued approval of sewer connections and failure ensure compliance [sic] aids and abets the Rockland County Sewer District's continuous violations of the [Clean Water Act] as indicated in the listed spills below." *Id.* They further argue that the Layne Affidavit does not address the allegations in the Amended Complaint, as it does not address the issue of the Village's approval of sewer connections or payment of fees for sewer services.[5] Therefore, "[t]here still remains a genuine issue of material fact regarding the Village's authority in approving sewer hook ups and fees paid for sewer services." Mem. of Law in Opp'n to Def. Village of Airmont's Mot. to Dismiss and Mot. for Summ. J. at 21.

In the Amended Complaint, Plaintiffs assert their Clean Water Act claim pursuant to sections 301 and 402. Section 301 states, "Except as in compliance with this section and section[] . . . 1342 [Section 402] . . . of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). Section 402 describes the National Pollutant Discharge Elimination System, pursuant to which permits may be issued allowing for the discharge of

---

[5] The Layne Affidavit was executed prior to the filing of the Amended Complaint. Notably, the allegations of aider and abettor liability asserted against the Village, including the allegations concerning the Village's authority to approve sewer use fees and connections, were added by the Amended Complaint. *Compare* Compl. ¶ 10 *with* Am. Compl. ¶ 15.

pollutants, and authorizes the creation of State permit programs, such as New York State's SPDES program. *See* 33 U.S.C. § 1342*; see also*, *e.g.*, N.Y. ENVTL. CONSERV. LAW § 17-0801. Compliance with a permit issued pursuant to Section 402 is deemed to be compliance with the Clean Water Act. 33 U.S.C. § 1342(k). Plaintiffs allege that "[u]nless enjoined by the Court, the Village of Airmont and RCSD #1 will continue to discharge pollutants into navigable waters in violation of its SPDES permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342." Am. Compl. ¶ 39. Presumably "its SPDES permit" refers to the District's permit, as Plaintiffs only allege the issuance of an SPDES permit to the District. Am. Compl. ¶ 31.

With respect to their Clean Water Act claim against the Village, Plaintiffs appear to base such claim on either ownership and operation of the wastewater collection and treatment system that is the subject of this action (Am. Compl ¶ 30), or aiding and abetting the District's violations of the Clean Water Act (Am. Compl.¶ 15). Since Plaintiffs do not refute the statement made in the Layne Affidavit that the Village does not own or operate the wastewater collection and treatment system, they cannot assert their claim against the Village on this basis. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (In opposing a motion for summary judgment, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").[6]

---

[6]While Plaintiffs argue that the Village's motion should be dismissed for failure to submit a statement of material facts pursuant to Local Rule 56.1, the Village did submit a "Statement of Facts" in support of its motion. Unfortunately, both the Village's Statement of Facts and Plaintiffs' Counterstatement Pursuant to Local Rule 56.1 fail to comply with the requirements of the rule. *See* Local Rule 56.1(a), (b), (d). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d

Alternatively, since they do not allege that the Village itself either had an SPDES permit with which it failed to comply or was required to obtain such a permit, Plaintiffs attempt to hold the Village liable as an aider and abettor. However, this theory also falls short. While there is little case law involving civil claims of aider and abettor liability under the Clean Water Act (and the parties cite no cases addressing the aider and abettor liability of a municipality), Plaintiffs point to the case of *O'Neil v. Q.L.C.R.I.*, 750 F. Supp. 551 (D.R.I. 1990), in support of their claim. As the court in that case explained,

> Plaintiff seeks to use the common law concept of aiding and abetting to find Davisville in violation of federal and state statutory and common law. The Restatement (Second) of Torts § 876 sets out the standard for aiding and abetting liability: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ."

*Id.* at 554. Defendant Davisville Credit Union was a private entity that had granted two mortgages on the land in question and held a mortgage on the land at the time the action was brought. In support of its aiding and abetting claim under the Clean Water Act, the plaintiff alleged, among other things, that "Davisville had 'influence and control' over the principal polluters because Davisville knew of the sewage problem and could have conditioned the loans on the fixing of the sewage problem." *Id.* In concluding that the plaintiff could proceed on its claim, the court noted that "Plaintiff has alleged sufficient involvement and possible control on the part of Davisville to present a viable claim of aiding and abetting." *Id.* at 555.

Here, in contrast, Plaintiffs have failed to allege the type of involvement and control that

---

Cir. 2001) (citations omitted).

would give rise to aider and abettor liability. They do not allege in their Amended Complaint that the Village had any knowledge of the District's alleged polluting activities with respect to the sewer system, nor do they submit anything in opposition to the Village's motion to support such an allegation. The authority of the Village to provide sewer services and approve sewer use fees and connections, assuming the truth of this allegation, does not, in and of itself, satisfy the Restatement (Second) of Torts' standard of knowing assistance or encouragement which informed the court's holding in *O'Neil*. Therefore, Plaintiffs cannot assert their Clean Water Act claim against the Village on this basis either. *See* 2 Moore's Federal Practice § 12.34[4][a] (3d ed. 2000) ("Dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief . . ."); *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (court is not to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (citation and quotation omitted); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (for Rule 12(b)(6) dismissal, court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof").[7]

Based on the foregoing, I recommend that the Village's motion to dismiss and for summary judgment be granted. Because I recommend dismissal of Plaintiffs' Clean Water Act claim against the Village, I recommend that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims asserted against the Village and that those claims be dismissed as well. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir.

---

[7]While this motion is treated by the parties as one for summary judgment, since the Village submitted the Layne Affidavit in support thereof, the litigation is still in its infancy and discovery has yet to take place.

2006); *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273, 275-76 (S.D.N.Y. 2007).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that your Honor deny both of the District's motions to dismiss, but grant the Village's motion to dismiss and for summary judgment.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M. Karas, at the United States Courthouse, 300 Quarropas Street**,** Room 533, White Plains, New York 10601, and to the chambers of the undersigned at 300 Quarropas Street, Room 434, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Karas.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v.*

*Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Karas and should not be made to the undersigned.

Date:   September __, 2007
       White Plains, New York

                                      Respectfully submitted,

                                      _____
                                      MARK D. FOX
                                      UNITED STATES MAGISTRATE JUDGE

*Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file objections must be made to Judge Karas and should not be made to the undersigned.

Date:   September 6, 2007
        White Plains, New York

                                        Respectfully submitted,

                                        _____
                                        MARK D. FOX
                                        UNITED STATES MAGISTRATE JUDGE